[No. 13939. Department One. — March 3, 1891.]

J. W. WOODROOF ET AL., APPELLANTS, v. F. C. HOWES ET AL., RESPONDENTS.

CORPORATION — FRAUD — SALE OF CORPORATE PROPERTY. — If the directors of a corporation, for the purpose of defrauding a portion of the stockholders, sell and convey land of the corporation for one tenth of its value, they commit a fraud.

ID. — CONNECTION OF DEFENDANTS WITH THE FRAUD. — If the directors are the implements and representatives of the grantees, and act with their connivance, and with their knowledge of the inadequacy of price, the grantees are participants in the fraud.

INADEQUACY OF CONSIDERATION — FIDUCIARY RELATION. — Inadequacy of consideration, where a fiduciary relation exists, is a fact tending to show actual fraud.

PLEADING — FRAUD. — While the facts constituting the fraud complained of must be pleaded, it is sufficient to set them forth in ordinary and concise language.

ID. — FRAUDULENT INTENT. — A fraudulent intent is one of the facts constituting actual fraud, and must be alleged. But it is sufficient to allege it in terms.

DEMURRER — ADMISSION. — A demurrer admits the truth of all allegations which are well pleaded, however improbable the facts alleged may be.

CORPORATION — SUIT BY STOCKHOLDER TO PROTECT CORPORATE INTERESTS — INSTANCE. — Where an executory contract for the purchase of land is assigned to a corporation under an agreement that the assignors shall pay all the installments of the purchase-money, and subsequently the corporation intrusts certain of the shares of its capital stock to the assignors under an agreement that they will sell the stock at not less than a fixed price, and apply the proceeds, as received, to the payment of the purchase-money under the original contract, and they sell the stock, but convert the proceeds to their own use, and by means of their control of the corporation prevent any legal proceedings from being taken in its name, a stockholder may maintain a suit in equity to compel them to perform their agreement, the corporation being joined as a defendant.

ID. — In such a suit, it is immaterial that the installments of the purchase-money are not yet due, the defendants having under the contract the privilege of paying the installments before maturity.

PLEADING — STATEMENT OF THE DEFENDANTS' BREACH OF OBLIGATION. — It is sufficient, in such a suit, to allege that the defendants have not paid the installments or applied thereto the proceeds of the sale of stock received by them. The court will not presume that some third person has paid the installments.

ID. — PAYMENT BY THE CORPORATION ITSELF. — If upon the defendants' failure to pay the installments, or to apply thereto the sums received by them from the sale of the stock, the corporation paid the installments, there is still ground for relief in equity. But it is not necessary to the cause of action to show that the corporation paid the installments.

PLEADING — PRESUMPTION AGAINST THE PLEADER. — The presumption against the pleader does not require the plaintiff to anticipate matters of defense, or to negative the existence of all other facts whatsoever. The court will not presume the existence of a novation, or an accord and satisfaction, or other collateral arrangement.

CORPORATION — FRAUD — RIGHT OF STOCKHOLDERS TO COME INTO EQUITY FOR RELIEF AGAINST ACTS OF THE DIRECTORS — INSTANCE. — Where certain stockholders, who are bound to make certain payments necessary for the protection of the corporate interests, receive stock to be sold, and the proceeds applied to the payments, and they appropriate the payments to their own use, and by means of their control over the corporation, and for the purpose of defrauding the other stockholders, induce the corporation to assume the debt without consideration, and to mortgage its property to pay for the same, and prevent any litigation in the corporation's name, the transaction is a fraud for which a stockholder may sue, the corporation being joined as a defendant.

ID. —The consequences of such a fraud are not avoided by the fact that the defendants afterwards bought back the stock whose proceeds they had converted, at a reduced price, and by means of their control over the corporation sold the stock to it at much more than its value. This constitutes an additional fraud.

ID. — RESOLUTION AT STOCKHOLDERS' MEETING CONTROLLED BY DEFENDANTS. — A resolution authorizing the transaction above stated, passed at a stockholders' meeting controlled by the defendants, is of no consequence.

ID. — RETURN OF STOCK SOLD TO THE CORPORATION. — In such a suit it is not necessary to offer to return the stock fraudulently sold to the corporation, if for no other reason, because the defendants, being in control of the corporation, are presumed to have control of the stock.

ID. — PARTIES DEFENDANTS. — In such a suit it is not necessary to join as defendants the directors who participated in the fraud.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*Wicks & Ward,* for Appellants.

*Brunson, Wilson & Lamme, M. T. Allen,* and *Barclay, Wilson & Carpenter,* for Respondents.

HAYNE, C. — This was a suit in equity by three stockholders of the Semi-Tropic Land and Water Company, for relief against certain transactions of the company with the defendants F. C. Howes, George H. Bonebrake, and Samuel Merrill. The trial court gave final judg-

ment for the defendants upon demurrer to the complaint, and the plaintiffs appeal. The complaint consists of seventy-five printed pages, and is exceedingly prolix and involved. It contains three causes of action separately stated. The demurrer was to the whole complaint, and to each separate cause of action.

1. The substance of the material facts alleged in the first division of the complaint is as follows: At the period in question, two of the plaintiffs and the defendants Howes, Bonebrake, and Merrill, were stockholders of the corporation. The third plaintiff acquired his stock somewhat later than the others, but this is not material in the view we have taken. The defendant Howes was a director of the company, and it is alleged that the other members of the board "were only nominal directors thereof for the purpose of carrying out the plans and subserving the individual interests of defendants Howes, Bonebrake, and Merrill, and had no interest in the management and conduct of its affairs, except as the implements and representatives of the interests and wills of the defendants Howes, Bonebrake, and Merrill." In this condition of affairs, the "said board of directors, disregarding the interests and rights of all stockholders of said company, other than said Howes, Bonebrake, and Merrill, and for the purpose of defrauding such stockholders, and through the connivance of said Howes, Bonebrake, and Merrill, and for the purpose of subserving the individual interests of said Howe, Bonesbrake, and Merrill," sold to them, for the price of thirty dollars per acre, certain specifically described lands, which "carried with them, as incident or appurtenant thereto, their *pro rata* proportion of all the waters owned by the Semi-Tropic Land and Water Company." At the time of this transaction the land sold was worth the sum of three hundred dollars per acre, which was known to all the parties. Subsequently, the three defendants named became directors of the company, and were so at the commence-

ment of the suit.   The plaintiffs demanded that a suit
be commenced in the name of the corporation.   But this
demand not having been complied with, the plaintiffs
brought the present suit on behalf of themselves and
the other stockholders, joining the corporation as a
defendant.

In addition to the foregoing facts, much unnecessary
matter is alleged, as, for example, the representations
which the defendants made to the plaintiffs at the time
the latter acquired their stock.   The suit is not for relief
against the contract under which they acquired said
stock, and hence the representations referred to are
immaterial.   So, too, it is immaterial to the case stated
in this division of the complaint how the corporation
acquired its rights to the property, though it may be per-
missible to state such facts to show that the three causes
of action grew out of the same set of transactions.

In support of their demurrer to this part of the com-
plaint, the defendants make the following points:—

*a.* It is said that a main foundation of this part of the
case is inadequacy of price, and that " inadequacy of price
does not even raise a presumption of fraud."

This may be true as to persons who do not stand in a
fiduciary relation towards each other.   But it is not true
as to persons whose relations are fiduciary.   A trustee is
not ordinarily allowed to make money out of his *cestui
que trust.*   If he does, the presumption is against him,
and he must show affirmatively that the transaction was
perfectly fair.   Inadequacy of consideration in such a
case is one of the facts constituting the fraud.   (*Golson*
v. *Dunlap,* 73 Cal. 157.)   And it is hardly necessary to
say that the relation which a director sustains to his
corporation is fiduciary within the meaning of the rule.
In the present case, it is not necessary to consider
whether the inadequacy of consideration alleged is suffi-
cient to make a case of constructive fraud, because, as
will be shown below, there are other allegations, which,

in connection with the one mentioned, make a case of
actual fraud.

*b.* It is urged that at this time Howes only was a di-
rector; that the other four constituted a majority of the
board; that it is not shown that Howes took any part as
director in the act complained of; and that the mere fact
that the three defendants persuaded the disinterested
majority of the board to do the act compained of does
not amount to fraud. "Persuasion," say the learned
counsel, "is never fraudulent."

In one sense it may be true that persuasion is not
fraudulent. In the same sense it may be said that persua-
sion is not theft; yet if a man persuades his "implements
and representatives" to steal, and knowingly shares the
booty, he is certainly guilty of theft. And so if he per-
suades his implements and representatives to commit
a fraud, and knowingly + /es the fruits thereof, he is
guilty of fraud. In the c / before us, it is admitted, for
the purpose of the demui r, that the directors were the
implements and represen /atives of Howes, Bonebrake,
and Merrill, and acted with their "connivance" for the
purpose of defrauding the other stockholders, in the
interest of said defendants. Such conduct was clearly
fraudulent on the part of the directors, and as said
defendants connived at such fraud, and received the fruits
thereof, they must be held to have participated therein.

*c.* It is contended that the charges of fraud are too
general. All that is necessary for the pleader to do in
this regard, however, is to set forth the facts constituting
the fraud in ordinary and concise language. Now, what
are the facts constituting the fraud?

In the first place, there is the fact of the relation of
the parties, viz., that the plaintiffs and defendants were
stockholders of the corporation, and that the directors
were the implements and representatives of Howes,
Bonebrake, and Merrill. This is set forth with sufficient
particularity. It was not necessary to state the means

by which said defendants induced the directors to act as their implements and representatives. It is sufficient to the cause made by the complaint that they did so act.

In the second place, there is the fact that the land was worth three hundred dollars per acre, and was sold to said defendants for thirty dollars per acre. It was surely sufficient to allege this in terms. And the criticism made upon it does not seem to be that the fact is not stated with sufficient particularity, but that it is not true. "An allegation," say the learned counsel, "may be so absurd that not even a demurrer will admit it, and in this case the court is presumed by the counsel for the appellants to assume that this property had increased in value from April to August, 1887, something like two thousand per cent. There are some things that even courts are presumed to know, one of which is, that unimproved property in such vast tracts does not increase in value from four thousand to five thousand per cent per annum."

The basis for this position is stated by counsel to be, that "the land was purchased from Howes, Bonebrake, and Merrill at fifteen dollars per acre in April, 1887." The allegation of the complaint, however, is, that it was purchased for 29,995 shares of stock of the par value of $100 per share. It does not appear what the actual value of the stock was at said time, nor even what was the price agreed to be paid to the original owners of the property; nor does this division of the complaint show what was the size of the tract. But aside from all this, the value of the land at the time of the sale complained of is alleged to have been three hundred dollars per acre. This is the allegation of a fact, and being such, was admitted by the demurrer; and after having been so admitted, its truth cannot be questioned for the purposes of the demurrer.

Finally, the complaint alleges that this transfer to Howes, Bonebrake, and Merrill for one tenth of the value of the property was made knowingly, and for the pur-

poses of defrauding the other stockholders.   In *Moss* v. *Riddle*, 5 Cranch, 357, Chief Justice Marshall says: "Fraud consists in intention, and that intention is a fact which ought to be averred; for it is the gist of the plea, and would have been traversable." The fraudulent intent or purpose, therefore, is one of the facts constituting actual fraud.   And we think that an allegation of such fact in terms is sufficient.   No amount of circumlocution or amplification can convey the meaning better than to say that a transfer by the directors of a corporation for one tenth of the value of the property was for the purpose or with the intent of defrauding the stockholders.   It may be necessary to add other facts.   But so far as this fact is concerned, the mode of statement is sufficient.   All that the code requires is to state the facts in ordinary and concise language.

The foregoing facts, taken together, constituted actual fraud, and were sufficiently alleged.

It may be added that it was not necessary to specify the particular water rights which were attached to the land conveyed.   The several tracts were sufficiently described.   And it was not material to the case to specify what rights were "carried with them as incident or appurtenant thereto."

2.   The second cause of action begins by stating in detail how the corporation acquired its rights to the property, and shows, in substance, the following facts: —

Before the corporation was organized, Howes, Bonebrake, and Merrill had a contract of purchase from one Henry Pierce and associates for 28,414.63 acres of land for the sum of $426,219.45.   This contract was executed on October 15, 1886, and fifty thousand dollars was paid thereon in cash.   The remainder of the price was to be paid in annual installments of fifty thousand dollars each, bearing interest at five per cent per annum.   But it was provided by said contract that "said Howes, Bonebrake, and Merrill might pay the whole or any part

of the purchase-money at any time before maturity." It is not expressly stated when the conveyance was to be made; but the presumption from what is stated is, that it was not to be made until the price was fully paid. The said defendants also acquired a smaller tract, known as the Morse place. But it is not necessary to dwell upon that.

In February, 1887, the defendants Howes, Bonebrake, and Merrill caused the Semi-Tropic Land and Water Company to be incorporated, and on April 16, 1887, they conveyed to it " the properties" above referred to, and agreed to " pay off and satisfy, at maturity, the debts then existing against the property, . . . . such debts being then owing by Howes, Bonebrake, and Merrill upon the above-described land and water rights, purchased from Pierce and associates, and from Morse, on account of the unpaid purchase price of said properties." In consideration of the foregoing transfer and agreement, the corporation transferred 29,995 shares of its stock. But only 19,995 shares were transferred directly to Howes, Bonebrake, and Merrill. The remaining ten thousand shares were transferred to one S. B. Hunt, to be held as security for the performance by said Howes, Bonebrake, and Merrill of the agreement to pay off said unpaid purchase-money.

After this the plaintiffs acquired their stock, and it is alleged that certain representations were made to them by defendants. But we do not consider such representations material to the case.

This division of the complaint goes on to allege that "the directors of said corporation, other than said Howes, owned only one share of the stock of said company, and were only nominal directors thereof, and had no interest in the management and conduct of its affairs, except as the implements and representatives of the interests and wills of defendants Howes, Bonebrake, and Merrill."

In this condition of affairs it is alleged that said defendants effected an arrangement with the directors

whereby the ten thousand shares, held by the trustee as
security for the performance by said defendants of the
agreement to pay off the unpaid purchase-money above
mentioned, was allowed to be withdrawn by them upon
condition that the same should be sold at not less than
forty dollars per share, and the proceeds (less five per
cent commission) applied, "*as received*," to the extin-
guishment of the debts affecting the property.

The statement of this agreement or condition is some-
what loose; but the counsel for the defendants have not
made any criticism upon it, but have assumed that it is
a sufficient statement of the condition or agreement upon
which the stock was given up to said defendants; and
following the lead of counsel, we have so assumed for the
purposes of this opinion.

This arrangement was made on August 27, 1887.  Pre-
viously to that date, Howes, Bonebrake, and Merrill had
negotiated a sale of said stock at $42.50 per share, and it
was finally sold at that price, making an aggregate of
$425,000 for the 10,000 shares.  Of this sum, said de-
fendants received $125,000 in cash on October 15, 1887.
The remainder was to be paid in installments, drawing
interest at eight per cent per annum.  It does not appear
whether these installments were ever paid, or what was
done with the evidences of the indebtedness.

Howes, Bonebrake, and Merrill did not comply with
the condition upon which they obtained said stock.
Prior to the receipt by them of the $125,000, they had
made the following payments on account of the purchase-
money of the property transferred to the company, viz.:
$50,000 on the execution of the contract of purchase from
Pierce and associates; $42,000 on August 31, 1887; and
$34,800 on September 19, 1887.  On the day of the re-
ceipt of the $125,000, they made a further payment of
$29,189.48.  Now, as the first three payments were made
before the $125,000 was received, it is manifest that they
could not have come out of that sum.  And it is ex-

pressly alleged that " all of said $125,000 received by said Howes, Bonebrake, and Merrill, saving and excepting the said $29,189.48, or thereabouts, has been appropriated and used by said Howes, Bonebrake, and Merrill for their own individual use and benefit, in violation of the rights of said corporation and the stockholders thereof." And it is further alleged that " no other or further sums of money than those above mentioned have ever been paid by said Howes, Bonebrake, and Merrill, or either of them, to said Pierce and associates, on account of the purchase price of said premises."

The plaintiffs further allege the refusal of the corporation to sue, etc., and that the suit is commenced by them on behalf of all the stockholders.

In support to their demurrer of this division of the complaint, the defendants make the following points: —

a. It is said that the sums which are admitted to have been paid on account of the purchase-money of the property were sufficient to pay the first two annual installments thereof; that it is not alleged that the other installments were due at the time of the commencement of the action; and that the court will not compel the defendants to pay them before maturity.

But the defendants had the privilege of paying all of such installments " at any time before maturity "; and the condition on which they received the stock was, that they would apply the proceeds, in the way mentioned, " as received. "

b. It is said that the plaintiffs have not alleged that any installment of the purchase-money remains unpaid; and that under the rule that pleadings are to be construed against the pleader, it must be presumed that such installments have been paid, or satisfied in some collateral way.

It is to be observed that it does not appear that the corporation was legally bound to pay the unpaid purchase-money, although its rights would be impaired by

non-payment. And it is to be further observed that Howes, Bonebrake, and Merrill were not guaranteeing to pay the debt of another. They were the persons, and the only persons, who were bound to pay said purchase-money. They agreed with the corporation, in the first instance, that they would pay *their own* debt, and in the second, that they would apply the proceeds of the stock to such payment. They did not so apply said proceeds, but converted them to their own use; and it is alleged that they did not pay the debt. This is sufficient show-ing of non-performance of their obligation. The court will not presume that some benevolent third person has paid the debt. And if, on the·failure of the defendant to apply the proceeds of the stock to the debt as agreed, the corporation paid it, that would not relieve said de-fendants from liability.

Nor will the court presume that there has been any novation or accord and satisfaction by which the debt to the original owners of the property has been satisfied. If any such arrangement has been had, it is matter to be set up by way of defense. The presumption against the pleader applies in certain cases, as, for example, where the pleading is silent as to an essential fact which must have occurred one way or the other, or where the lan-guage used is fairly susceptible of two constructions. But it is not carried to such an extent as to require the pleader to anticipate matters of defense, or to negative the existence of all other facts whatever. Even at com-mon law, that was not required. And much less is it required under a system where pleadings are required to be liberally construed with a view to substantial justice. (Code Civ. Proc., sec. 452.)

*c.* It is said that it does not appear what was done with the evidences of debt representing the balance of the proceeds of the sale of the ten thousand shares of stock; and that it must be presumed either that they were turned over to the persons to whom the debt was due

(which is sufficiently answered by what we have just said), or that they were turned over to the corporation itself, and received by it in satisfaction of the agreement of the defendants.

But such agreement was, not that the proceeds of the stock were to be turned over *to the corporation:* they were to be applied to the extinguishment of the debt to the original owners; and the court will hardly presume that some entirely new arrangement was made.

*d.* It is said that it is not shown that the corporation has paid any money on account of said debts, or that it has sustained any damage by reason of the alleged non-performance by said defendants of their agreement. But the payment of the purchase-money on the original contracts of purchase is essential to the protection of the corporation's right to the property. And if said defendants have not paid said money as they agreed to do, and have converted the cash proceeds of the stock to their own use, the corporation (or a stockholder, in a proper case) has the right to come into equity to compel the defendants to perform their agreement with the corporation.

3. The third division of the complaint contains the substance of the second division, and in addition thereto shows the following facts:—

Of the sum due to the original owners of the property, the defendants Howes, Bonebrake, and Merrill paid no more than $155,989.48. But prior to the transaction to be mentioned they had induced the board of directors to pay on account of said debt the sum of twenty-five thousand dollars, which, it is alleged, "was paid on account of defendants Howes, Bonebrake, and Merrill, and at their instance and request," which, if true, entitles the corporation to recover it back. These payments left due to the original owners of the property the sum of $272,441.63, for which said defendants were personally liable. In order to get rid of such liability, it is alleged that they induced

their creatures in the board of directors to have the corporation assume the debt without consideration.

The allegations in this regard are as follows: That the directors, " for the purpose of defrauding the other stockholders of said company, other than said Howes, Bonebrake, and Merrill, and for the purpose of encumbering the property of said corporation with debt, without any consideration moving in favor of said corporation or in favor of any other of the stockholders of said corporation, other than said Howes, Bonebrake and Merrill, and with the intent of relieving and releasing Howes, Bonebrake, and Merrill from their obligation to pay off and discharge the debts upon the lands and waters of said corporation, did by connivance and collusion with said Howes, Bonebrake, and Merrill, and with their consent, and at their request and instigation," issue notes of the company to the original owners of the property in an aggregate sum of $272,441.63, bearing interest at seven per cent per annum, and mortgaged the property of the corporation to secure the payment of such notes; and that "such notes were given without any consideration in favor of said corporation, or of any of the stockholders thereof, other than Howes, Bonebrake, and Merrill, and solely for the benefit of Howes, Bonebrake, and Merrill, and with the intent to relieve said Howes, Bonebroke, and Merrill from their obligations to pay·off and satisfy at maturity the indebtedness upon the lands and waters of said corporation, for which debts said Howes, Bonebrake, and Merrill were bound and obligated." It is further alleged that in and about the above transaction the directors unlawfully paid an attorney's fee of five thousand dollars, which sum "was paid for the sole benefit of defendants Howes, Bonebrake, and Merrill."

The complaint goes on to allege that prior to September 20, 1888, Howes, Bonebrake, and Merrill bought up the 10,000 shares of stock which they had sold about a

year previously (the proceeds of which sale they had converted to their own use), and sold the same to the corporation at a grossly exorbitant price, the consideration being a credit of the $272,444 assumed by the corporation as above set forth, the conveyance by it of $50,000 worth of land, and the issuance of its promissory notes for the remainder of the price.

In relation to this transaction, it is alleged that about four months after the assumption by the corporation of the debt above mentioned, it was proposed by Merrill, at a stockholders' meeting held September 20, 1888, that the corporation should buy said stock at $37 per share, payment to be made in the manner above stated, viz., that a credit of $272,444 should be allowed the company for having assumed the debt of Howes, Bonebrake, and Merrill; that the company should assume a debt of $14,440, due from said defendants on the Morse property, and another debt of $850; that "the sum of $50,000 be paid in lands of the company to be deeded to three trustees representing the parties to whom the 10,000 shares of stock had been formerly sold"; and that "the balance of said purchase price of $370,000 be paid in notes of the company"; that this proposal was accepted at said stockholders' meeting, and that a resolution to that effect was passed, said defendants and others voting in favor thereof, and that immediately thereafter the arrangement was carried out by the directors.

It is further alleged that "such ten thousand shares of stock were then and there, at the time of such stockholders' and directors' meeting, the property of said Howes, Bonebrake, and Merrill, having been obtained by them from the former purchasers thereof," and that "at the time such stockholders' and directors' meeting was held, and such ten thousand shares of stock purchased by said corporation, the said stock was not worth in the open market, and could not have been sold for more than, twenty-five dollars per share, all of which

facts were well known to said Howes, Bonebrake and Merrill"; that all of the acts in relation to the transaction above mentioned "were done while said Howes, Bonebrake, and Merrill were the owners of a majority of the corporate stock of said corporation, and while said Howes, Bonebrake and Merrill were directors of said corporation," and "at the actual instance, request, and instigation of defendants Howes, Bonebrake, and Merrill, and for their own personal interest and benefit"; and that at said stockholders' meeting "1,910 shares of the capital stock of said corporation were not represented either in person or by proxy; that the stock of plaintiffs herein named was not represented or voted at such meeting, and that plaintiffs did not appear or ratify such action of such stockholders' meeting."

It is further alleged that the corporation has paid the sum of $17,150 as interest upon the debt assumed by it as above mentioned; and that subsequent to the transactions above set forth, it has borrowed the sum of $250,000 from a third person, and mortgaged its property to secure the payment thereof, and with the moneys so raised, and its note for $50,000, it has paid off the debt to the original owners of the property, assumed by it as above stated.

In support of their demurrer to this portion of the complaint, the defendants make the following points: —

*a.* They renew the points as to the presumption of payment or satisfaction in some other way made in relation to the second cause of action. These have been sufficiently considered.

*b.* They urge that the corporation had power to purchase its own capital stock, and that the resolution at the stockholders' meeting was sufficient warrant for the terms of the purchase.

It is not necessary to decide upon this appeal whether the corporation had power to purchase its own stock. Such a power would not excuse the fraud of the defend-

ants. That they were guilty of fraud is plain, if the allegations of the complaint are true. They were personally liable for the debt to the original owners of the property, and agreed with the corporation that they would pay such debt. They obtained the stock put up as security for their performance of said agreement upon condition that they would apply the proceeds of such stock, "as received," to the extinguishment of said debt. Instead of so doing, they converted the cash proceeds to their own use, leaving the debt unpaid, and induced their creatures in the board to have the corporation assume the debt without consideration. This action on the part of the board was in the interest of said defendants, "and for the purpose of defrauding the other stockholders." Such conduct on the part of the directors was unquestionably fraudulent, and the persons who instigated such fraud, and reaped the fruits thereof, must be held to have participated therein.

In order to cover up this fraud (it is alleged) they committed another. About four months after the assumption of the debt by the corporation as above set forth, they bought up the ten thousand shares of stock which they had sold a year previously at $42.50 per share (the cash proceeds of which they had converted to their own use), and by means of their control over the corporation, sold said stock to it at $37 per share, it then being worth only $25 per share. At this time Bonebrake and Merrill were in the board, and the other directors were the mere creatures of the three defendants. We do not think that any argument is required to show that this transaction was fraudulent. It certainly does not help the fraud first mentioned.

Nor is the resolution at the stockholders' meeting of any consequence; for since the defendants held a majority of the stock and voted at the meeting, they controlled the meeting, and the resolution was, in effect, but their

formal consent to their own fraud.  It cannot affect the rights of the stockholders who did not consent.

c.  It is urged that the transaction was "executed," and therefore cannot be disturbed.

But whatever color of force this might have, if the objection was merely that the transaction was *ultra vires*, it has no application to a case where there is fraud.

d.  It is objected that there was no offer to place Howes, Bonebrake, and Merrill *in statu quo*.

But the suit is not for a rescission of the contract whereby the plaintiffs acquired their stock, and therefore no such action on their part was required.  So far as the ten thousand shares sold to the corporation are concerned, it is sufficient to say that, aside from any other reason, the three defendants constitute a majority of the board, and must be presumed to have control of such stock.  So far as concerns the three hundred thousand dollars evidences of debt (the balance of the proceeds of the first sale of the ten thousand shares of stock), which the counsel say "have vanished from view," it is sufficient to say that, aside from any other reason, such evidences of debt are not shown to have ever come to the possession of the corporation.  If they did, they must be under the control of the defendants.

e.  It is argued that if the theory of the plaintiffs be correct, the result is, that the original contract of Howes, Bonebrake, and Merrill is still in force, and that it must be presumed that they will perform it; that is to say, it must be presumed that they will pay off the debts to the original owners of the property.

As the corporation has mortgaged its property to raise money to pay off such debts, and has actually paid them off, this position is somewhat singular.

f.  It is said that "the whole effect of the transaction mentioned has been that the corporation is vested with a perfect title to the identical stock which it originally regarded as sufficient collateral, and taken by the cor-

poration at a sum far less than the amount of the indebtedness to which it was originally regarded as a sufficient security. There is no damage shown, and there could be no action without damage."

That is to say, that because the corporation originally regarded the ten thousand shares of stock as sufficient security for the performance of the defendants' agreement, they could sell the stock at $42.50 per share, and convert the cash proceeds to their own use, in direct violation of their agreement to apply it to the debt affecting the corporation's property, and about a year afterwards buy up the same stock, and by fraudulent means induce the corporation to purchase it at $37 per share, when it was only worth $25 per share in the market, and then say to the other stockholders: " Well, the corporation has the stock, which it originally regarded as sufficient collateral. How is it injured ?"

*g.* It is said that " all the parties have permitted the transaction to rest for more than a year, and that to permit a rescission would be to do violence to every principle of law and equity."

But we do not think that the doctrine of laches applies.

4. The demurrer takes the ground that there is a defect of parties defendant, a misjoinder of parties, and a misjoinder of causes of action.

The first ground is the only one which is argued. It is said that the other members of the board of directors should have been joined as defendants. So far as the corporation's interests are concerned, it is itself a defendant. As to the rest, Howes, Bonebrake, and Merrill are the only persons interested in the transactions complained of. The other directors were only their " implements and representatives," and are not shown to have received, or to have any interest in, the fruits of said transactions. It was not necessary to join them as defendants.

The other grounds mentioned have not been argued. The fact that there was a demurrer on these grounds is mentioned in the statement of facts. But there is not a word of argument in either of the briefs for respondents in relation to the grounds, or anything to give rise to the inference that they are relied upon. Under these circumstances, the grounds mentioned should be considered as waived.

5. We do not think that it is necessary for the court to determine at this stage of the case the precise measure of equitable relief to be awarded. A court of equity molds its belief according to the particular circumstances of the case. (*Heinlen* v. *Martin*, 53 Cal. 342, 343.) And it is better to reserve the question mentioned until all the circumstances shall have been disclosed by the evidence. It is sufficient for the disposition of the demurrer to say that in our opinion each division of the complaint states a cause of action, and requires an answer to the charges made.

We therefore advise that the judgment be reversed, and the cause remanded, with directions to overrule the demurrer, with leave to the defendants to answer.

VANCLIEF, C., and BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed, and the cause remanded, with directions to overrule the demurrer, with leave to the defendants to answer.