[Civ. No. 14424. First Dist., Div. One. Oct. 23, 1950.]

LOUISE MARIE SHEA, Respondent, v. THOMAS MICHAEL SHEA, Appellant.

Malcolm M. Champlin, Stanley E. Sparrowe and Stark & Champlin for Appellant.

Frank C. Nunes, Jr., for Respondent.

BRAY, J.—Defendant appealed from four orders of the superior court modifying a previous order giving him custody of the minor children of the parties by prohibiting him from taking them outside the state.

## QUESTION PRESENTED

Has the court authority, without changing a previous order giving the father custody of his children, to require that they may not be taken from the state, thereby, in effect, giving actual custody to the maternal grandparents?

## FACTS

Plaintiff wife secured an interlocutory decree of divorce from defendant March 16, 1942, and was given custody of the

three children of the parties, whose ages were then approximately 1, 2 and 3 years respectively. (At the time of the hearing under consideration they were approximately 8, 10 and 11 respectively.) Defendant was ordered to pay for their support. A final decree was obtained by plaintiff May 16, 1947. This continued the custody and support provisions of the interlocutory decree. All the lifetime of the children they lived at the home of the maternal grandparents in Oakland. Plaintiff and defendant lived with them there prior to the separation. Plaintiff lived with them there from the separation until her remarriage on September 20, 1947, when she established a separate home with her new husband. December 22, 1947, the final decree was modified, with the consent of plaintiff, changing the custody from plaintiff to defendant and abrogating the support award. Defendant lived with the children at the grandparents' home from December, 1947, to December 16, 1948, when he remarried and moved to Wendover, Utah, where he had obtained employment with a railroad company. He left the children with the grandparents.

### PROCEEDINGS

July 25, 1949, plaintiff applied to the court to modify the custody order of December 22, 1947, on the grounds of change of circumstances (1) that the children are actually in the care and custody of the grandparents and that defendant gives them no physical care or guidance, and for long periods of time does not visit them; (2) plaintiff had remarried and is anxious to give them a home, physical care and moral guidance and is actually giving them such care and guidance. At the hearing plaintiff testified that while she could accommodate the children in her home by having two of them sleep in one bedroom, and the third on a divan in the living room, and that she and her husband intended to build another room if she were awarded custody, she felt that it would be for the children's best interests to remain with the grandparents. Defendant testified that he had rented a house at Wendover with three bedrooms; that he had completely furnished it and bought a larger car in anticipation of having the children with him. It is unnecessary to detail all the evidence at the hearing. At its close the court stated that the best interests of the children required that they remain "where both parties have selected for them to be and where they have been for practically all their lives."

There followed two minute orders and two signed orders.

A stipulation of the parties was filed to the effect that the first minute order and the first signed order might be corrected by the court because of clerical and inadvertent errors therein. Upon such stipulation, a minute order and a signed order were entered. While defendant has attempted to appeal from all four orders, no contention is made as to their regularity, nor do the parties question the regularity of the appeal herein.

While under rule 2(b)2, Rules on Appeal, it is probably the last minute order which is the appealable one, the matter is not important as the notice of appeal was filed within the time of all orders and the substance of each is practically the same. For the purposes of the discussion we will consider the final signed order. This order provides that for the best interests of the children the order of December 22, 1947, is modified as follows: "1. That the minor children of the parties hereto, namely, Eugene, Patricia and Donna, shall not be taken out of the State of California except with the mutual consent of the parties hereto or by an Order of Court."

## CAN THE COURT REQUIRE THAT THE CHILDREN REMAIN IN CALIFORNIA?

Taking the order at its face value as merely one prohibiting the father who had custody, from removing the children from the state, the court had no power to make such an order. Plaintiff has cited no authority, and we have found none, for her contention. While there are no cases in California on the question of taking the children out of the state, it has been held that a court, in the absence of a finding that the child's removal would prejudice its rights or welfare, has no power to prohibit the parent having custody from taking the child out of a particular county. Thus, in *Heinz* v. *Heinz*, 68 Cal.App.2d 713 [157 P.2d 660], it was held that the court exceeded its authority in prohibiting the father to whom it gave the custody of his minor son, from removing him from Los Angeles County. After quoting section 213 of the Civil Code, which reads "A parent entitled to the custody of a child has a right to change his residence, subject to the power of the proper court to restrain a removal which would prejudice the rights or welfare of the child" the opinion reads (p. 715): "In *Luck* v. *Luck*, 92 Cal. 653, 655 [28 P. 787], our Supreme Court states the rule thus: '. . . if he [the father] is entitled to the custody of the children at all, he has the right to name any reasonable place in which they shall abide with him. . . .'

"Applying the foregoing rule to the facts of the present case, since the trial court found that plaintiff was a fit and proper person to have the custody of his minor child and there was no finding that the child's rights or welfare would be prejudiced by his removal from Los Angeles County, the court's order in restraining plaintiff from removing his son from Los Angeles County was erroneous."

It is interesting to contrast section 213 with Probate Code, section 1500. The latter provides that the guardian of the person of a ward may fix the residence of the ward "*at any place in the state, but not elsewhere without the permission of the court.*" (Emphasis added.) There is no similar restriction in section 213 concerning the right of a parent to change the place of residence. While in our case, the court found that the best interests of the children would be served by leaving them within the state, it did not find the affirmative fact that removal would prejudice their rights or welfare. The inhibition against a geographical change was only incidental to the court's belief that the custody should remain in the grandparents. As discussed later, the court is legally not entitled to indulge in such belief. By analogy, *White* v. *White*, 68 Cal.App.2d 650 [157 P.2d 415], applies. In that case, on application the court modified a previous order which prohibited the child being removed from Southern California by providing over the father's objection that the divorced mother might take the child with her to the home of herself and her new husband in Pennsylvania. The court said (pp. 651-2): "In enacting section 138 of the Civil Code the Legislature did not limit the discretion of the court by state boundaries. Counsel has not cited any California case in which it is especially held that the superior court may grant permission of a parent to take a minor child from this state but in a number of other states such orders have been made with the approval of the reviewing courts. [Citations.]" (See, also, *Clarke* v. *Clarke*, 35 Cal.2d 259 [217 P.2d 401].)

### DID THE COURT HAVE AUTHORITY TO AWARD CUSTODY TO GRANDPARENTS?

Both parties agree that the effect of the order here is to grant custody to the grandparents. They could hardly do otherwise in view of the language in *Roche* v. *Roche*, 25 Cal.2d 141 [152 P.2d 999], where the order gave both parents custody of the children but awarded the physical care and control thereof to the paternal grandparents (p. 144): "It is of no

significance that the court awarded the bare legal 'control' of the child to both parents. The essential thing in which a parent is interested is the physical control and care of the child, which here was awarded to the paternal grandparents. The policy above declared may not be thwarted by the artifice of giving a fit parent bare legal control while denying actual physical care and custody.'' ▮ Taking the order as such, the California authorities deny the power of the court to make such order without a finding that both parents are not fit or proper to have the custody. ▮ California has, in effect, adopted the harsh rule that the right of a fit and proper parent to have the custody of his child is somewhat in the nature of a property right and paramount to the welfare and best interests of the child. In *Roche* v. *Roche, supra* (25 Cal.2d 141), the trial court, in a divorce action, awarded the custody of the minor child to both parents but provided that the best interests of the child would be subserved by granting the physical care and control thereof to the paternal grandparents with right of visiting in the parents. In reversing this order, the court referred to the case of *Stever* v. *Stever,* 6 Cal.2d 166 [56 P.2d 1229]. In that case, on an application by the mother for an order giving her the custody of the minor child, after divorce in which no disposition of the child was made, the court awarded the custody to the paternal grandparents without finding that either parent was unfit. On appeal the order was reversed. In the Roche case, the court said that in the Stever case it was held that section 197 of the Civil Code must be construed with section 246 of the Civil Code and that together they contemplate that ''the natural right of a parent to the care of a minor child, if a fit and proper person, shall prevail as against an entire stranger, the law presuming, in the absence of either evidence or findings showing the contrary, that either parent is a proper person to whom the minor's care should be awarded; and in a contest between the mother and father of a minor for custody, the court is not justified in awarding the custody to the parents of the father, although the latter consents, without a finding that the mother is an unfit person for the custody.'' (P. 143.) Section 197 of the Civil Code provides: ''The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings.'' Subdivision 1 of section 246 (now Prob. Code, § 1406) provided, in effect, that in appointing a

guardian for a minor, the court should be guided by what appears to be for the best interest of the child in respect to its temporal, mental and moral welfare, and if the child were of sufficient age to form an intelligent preference, the court should consider that preference. This is also the language used in section 138 of the Civil Code as to the considerations to be considered by the court in awarding custody in a divorce action. The Roche decision refers to *Newby* v. *Newby,* 55 Cal.App. 114 [202 P. 891], saying (p. 143) ". . . no finding was made as to the fitness of either parent, but the trial court found that the best interests of the child required that custody be awarded to a stranger and made an order in accordance therewith. Such order was reversed on appeal upon the theory that if either of the parents is a fit and proper person to have the custody of a child, a stranger may not usurp that right. That principle was enunciated in the Stever case at page 170, where this court said:

" 'But before the court can deprive the mother of her right to the minor's custody and give her into the charge of strangers, there must be a finding that the mother is an unfit person to have the custody of her child.' "

Then, in the Roche case (p. 144), the court quotes from *In re White,* 54 Cal.App.2d 637, at page 640 [129 P.2d 706]: " 'The right of a parent to the care and custody of a child cannot be taken away merely because the court may believe that some third person can give the child better care and greater protection. One of the natural rights incident to parenthood, a right supported by law and sound public policy, is the right to the care and custody of a minor child, and this right can only be forfeited by a parent upon proof that the parent is unfit to have such care and custody.' " As pointed out in the Roche case, there are a number of cases in California which apply the same principle, so it must be taken as settled law that in this state the courts place more stress on the right of the parent to the custody of the child (except where the parent is unfit) than on the best interests and welfare of the child. The presumption stressed by the courts that the best interests of the child in respect to its temporal, mental and moral welfare always can be subserved by giving its custody to a parent whom the court cannot or does not wish to declare unfit, is a fallacy, but one which, having been defined by the Supreme Court, we, as an intermediate court, are compelled to continue. Other cases holding that custody may not be given to a grandparent unless the parents are

unfit are *Eddlemon* v. *Eddlemon,* 27 Cal.App.2d 343 [80 P.2d 1009]; *Guardianship of De Ruff,* 38 Cal.App.2d 529 [101 P.2d 521], and *Robertson* v. *Robertson,* 72 Cal.App.2d 129 [164 P.2d 52]. As stated in the dissent in the Roche case, the California cases regard the child somewhat as a chattel and the property interest therein paramount to the best interests of the child.

An excellent review of the matter of custody of minors appears in 33 California Law Review, 306, which points out that actually, the California courts are only rendering "lip service" to section 138, subdivision 1, Civil Code, and are applying almost conclusively, unless the parents are found unfit, a presumption that the interests of the child will be subserved best by awarding its care to a parent. It points out, too, that some jurisdictions in this country consider the best interests of the children to be paramount to "parental right" under circumstances which fall short of the unfitness of the parent, although there are other jurisdictions where regardless of statutory provisions, like section 138, the courts adopt the same rule as does California. The former is the more modern rule. The article ends up by asking a rather pertinent question: "The arbitrary rule that a parent must first be found unfit before custody may be awarded to a third person, which our courts enforce, may be easy to apply, but may it not also, on occasion, be ruinous to the physical and psychological well-being of the child?" (P. 316.)

Another excellent article on the same subject appears in 19 Southern California Law Review, 72, which points out that the California rule "represents an adherence to the old common law principle that the child was regarded somewhat as a chattel and that the property interest of the parent was paramount to the best interest of the child." (P. 72.) "The modern American rule is contra to the common law principle. The theory is that the courts of justice may, in their discretion, when the morals or safety or interest of the child strongly require it, withdraw the custody from the father and confer it upon the mother, or take the children from both parents and place it in the care and custody of someone else." (P. 73.) It is clear that as the law now stands, the court had no power, without finding both parents unfit, to make an order which, in effect, gave the custody to the grandparents. Hence, the order was erroneous.

 Although the order must be reversed, the case should be remanded for further hearing, so that the trial court may

determine what is in the best interests of the children, in view of the fact that the custody may not be given to the grandparents. Here the children have known only one home in their lifetime. True, the parents most of the time have shared that home with them. Now, a choice must be made. Shall the children be sent to Utah to live with their father (who unquestionably, so far as the evidence shows, is a fit parent) and a stepmother, and thereby completely torn from the roots they have established all their lives, and away from their mother and grandparents? Of course, the grandparents have no rights, but the children have. Or, shall they be awarded to the mother and a stepfather, and thus left where they may maintain contact with their grandparents and the only home they have ever known? The mother has never been declared unfit. In the hearing below the emphasis was on the matter of leaving them with the grandparents rather than on a change of custody as between the parents alone. It very well may be that as the custody cannot be awarded to the grandparents, the court may determine that the best interests of the children will be subserved by awarding the custody to the father, and by having them go to Utah, or by awarding them to the mother. We are not attempting to suggest the course to be taken by the trial court in determining the custody as between the parents, other than to point out that the court, in determining custody between the parents, may take into consideration what it is not permitted to consider as between the parents and grandparents, "what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare." Moreover, at least one of the children "is of a sufficient age to form an intelligent preference."

Plaintiff cites a number of cases which hold that in controversies for custody *between parents* the paramount consideration is as set forth in section 138, subdivision 1 of the Civil Code, the best interest of the child. Among these are *Noon* v. *Noon,* 84 Cal.App.2d 374 [191 P.2d 35]; *Taber* v. *Taber,* 209 Cal. 755 [290 P. 36]; *Nave* v. *Nave,* 35 Cal.App. 27 [169 P. 253]; *Johnson* v. *Johnson,* 72 Cal.App.2d 721 [165 P.2d 552]; *Di Giorgio* v. *Di Giorgio,* 87 Cal.App.2d 576 [197 P.2d 213]. Unfortunately, as we have shown, this rule does not apply when the question is between parent and grandparent.

The orders are reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.