[Civ. No. 23265.   Second Dist., Div. One.   Feb. 9, 1959.]

JANE HAMILL DOZIER, Respondent, v. JUSTIN P.
DOZIER, Appellant.

Walter H. Young for Appellant.

Hahn, Ross & Saunders for Respondent.

LILLIE, J.—An interlocutory judgment of divorce was granted after a default hearing, entered March 8, 1957. The parties stipulated that plaintiff have custody of the 8-year-old boy, Nathan, with certain visitation rights reserved to defendant; and that a mutual restraining order preventing Nathan's removal from the state without prior court order or written consent of the other spouse be entered, all of which became a part of the interlocutory decree.

The undisputed facts disclose that plaintiff and defendant had lived with the child in New York and moved to California in September, 1954, where they separated in July, 1956. Since the separation, the child has lived with plaintiff in Los Angeles and is now being regularly supported by defendant, who pays $100 per month for that purpose.

Although plaintiff obtained the divorce, no provision for alimony appears in the decree. However, she is able to work, employable and has engaged in general office work. She desires to go to Connecticut to be near her family, where she believes she can obtain employment. She plans to live with her mother who will take care of the boy while she works.

Approximately five months after the entry of the interlocutory decree, plaintiff filed an order to show cause asking the lower court to modify the interlocutory judgment of divorce by dissolving the restraining order preventing her from taking the child out of the state, on the ground: "(A)ffiant desires to move with said minor child to Stamford or Westport, Connecticut. That affiant's family resides in said State whereas affiant has no family in California." The matter was heard before a commissioner, and pursuant to his findings of fact and recommendations that "the best interest of the child will be promoted by granting the relief sought by the plaintiff" the trial court entered its order permitting plaintiff to remove the child from California to live in Connecticut subject to certain medical examinations every four months, and physical possession of the child by defendant in July and August of each year. Exceptions to the findings and recommendation of the commissioner were denied and it is from this order defendant appeals.

Appellant contends that the trial court abused its discretion in that it gave little or no consideration to the rights and

welfare of the child but was primarily concerned with the desire of plaintiff to move to a state in which her mother and other relatives live.

As pointed out by respondent, the lower court is given a wide discretion in matters of this kind, and its determination will not be disturbed upon appeal in the absence of a manifest showing of abuse. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202 [259 P.2d 656]; *Gantner* v. *Gantner*, 39 Cal.2d 272 [246 P.2d 923]; *Taber* v. *Taber*, 209 Cal. 755 [290 P. 36].) However, in the exercise of its discretion in custody proceedings, it is likewise clear that the trial court must be guided primarily by the welfare and best interests of the child. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202 [259 P.2d 656]; *Ward* v. *Ward*, 150 Cal.App.2d 438 [309 P.2d 965]; *Shea* v. *Shea*, 100 Cal.App.2d 60 [223 P.2d 32].)

The record before us reveals, on the one hand, a plan of plaintiff to live with her relatives in Connecticut; and on the other, a child 8½ years old, subject to severe asthmatic attacks and pneumonia, whose health will be further endangered if taken to the eastern climate, and a close association between the boy and his father. The evidence shows no real compelling cause for plaintiff's anticipated move. She is as employable here as in Connecticut; defendant has monthly paid adequate support for the child; plaintiff is apparently in good health; she is in no financial stress and has no reason for making the move other than to be near her mother and relatives.

Plaintiff was the only witness in support of her application for modification. From her testimony, it is obvious that basically she wants to move to Connecticut because she is now alone, has no relatives in California and her mother, brothers and sisters live at or near Stamford. Her family is very close, all willing to help each other and she plans to live with her 72-year-old mother who will care for the child while she works. The mother lives in a two-bedroom apartment with plaintiff's bachelor brother of 42, with whom the boy will sleep. Her two sisters will also be available to help care for the boy if necessary, and he will have the advantage of the companionship of cousins near his own age. Plaintiff has been in California since 1954 and has only a distant cousin here. At the time of the divorce plaintiff was doing general office work but the position she held was terminated. She believes she can obtain more lucrative employment of the same kind in Connecticut although she now has nothing more

than the promise of an interview. When asked how the move to Connecticut would be for the best interest of the boy she answered that her relatives could provide a "very, very close family tie which I feel the boy is very much in need of." Defense counsel than asked the question, "And the main reason you want to make this move is so you can be near your family?" to which she responded: "To make it better for my son and myself, yes." In the following part of her deposition, which was read into evidence, she was again asked the same question to which she replied: "So I can be near my family and so the youngster will know the family. Q. Is there any other reason why you want to make that move? A. That is the main reason."

However, in opposition to plaintiff's application, the uncontradicted testimony of the boy's doctor and his father reveals a heretofore undisclosed serious circumstance concerning the child. Dr. John G. Thom, physician and M. D., familiar with winter conditions on the East coast, testified, without contradiction or impeachment, to the present state of the child's health and his opinion concerning the effect thereon of the anticipated move. The boy has been Dr. Thom's patient since March 10, 1955, at which time he was treated for bronchial asthma. To aid him in his treatment, the doctor requested and received reports from the child's doctors in New York. He last examined Nathan on February 1, 1957, and again on September 9, 1957, and found him still susceptible to bronchial pneumonia or infection and asthmatic attacks. He testified that each time the boy develops a respiratory infection it immediately goes to his lungs and he is much better off in the climate here than in the Midwest or the East; and from "the history I have before me of all the repeated attacks he had there and the relative infrequency of the attacks he had here, it would be much better to have him here. I think it would be definitely detrimental to return to the east coast or the middle west." Dr. Thom was asked, "Do you have an opinion as to whether this child is susceptible to bronchial pneumonia or infection" to which he answered, "Yes, he is, still."

The history of the child's bronchial and lung condition obtained by Dr. Thom from Drs. Worthington and Blauner and the Presbyterian Hospital in New York reveals "(T)he respiratory infection and bronchial asthma would frequently end up with pneumonia and that is what was the condition in

New York City.'' In January, 1956, Dr. Thom took out the boy's tonsils, but he testified they had nothing to do with bronchial asthma and he had been sick several times since. He further testified that now the child is in ''pretty good health'' and has been improving all along; that the last respiratory infection was in April, 1956. On September 13, 1957, Dr. Blauner, one of the boy's New York doctors, wrote to Dr. Thom as follows: ''Nathan had recurrent bouts of pneumonia. I strongly recommend that Nathan stay in a warmer and drier climate. I would not recommend the New York climate for him.'' Counsel for plaintiff moved to strike this statement, but the record shows no disposition of the motion and it remained part of the evidence. The commissioner than questioned Dr. Thom who testified the boy still has bronchial asthma and will always have it and, although it can be controlled, it cannot be cured; that the last two attacks kept Nathan out of school for a week or two at a time; that an asthmatic attack is brought on by respiratory infection and although antibiotics prevent pneumonia they do not prevent the attacks; that in California they were milder and fewer, those in the East having been more frequent, one the first year, two the second and three the year before he came to California, all having been followed by pneumonia; and that if the child is taken to the East coast there is a likelihood of a recurrence of pneumonia. To this last, an objection was interposed but again no ruling was made thereon.

Defendant, a teacher employed by the Los Angeles City school system, testified in connection with his son's health and his relationship with the boy. He said that in New York the boy's attacks were so frequent he was often unable to retain his strength between them; in February, 1954, he was out of school for two weeks, and in April, 1954, two or three weeks. In 1953 and 1954 he had repeated attacks of asthma and bronchial pneumonia, finally resulting in a bronchoscope examination. Drs. Blauner, Evans and Baker, who treated the boy and examined his X-rays, told defendant he should be taken to a drier climate; and since his move to California, Nathan has steadily improved in health. When plaintiff obtained the divorce, defendant insisted on the restraining order to prevent the boy's removal from California.

As to the close association with his son, defendant testified that he visited Nathan every other weekend and took him to dinner one night a week on alternate weeks, and when his son is with him they always spend their time together;

that they have planned trips of an educational nature such as to Wilmington, Marineland, museums, etc., and in August took a trip to the redwoods. Nathan is enrolled in the Cub Scouts and participates in a swimming program he arranged for the boy; he is interested in machinery and is presently building a scooter. Defendant and his son enjoy a friendly relationship and are fond of each other and since he is approaching adolescence, the father believes it is important for the boy to have this close association with him.

Although plaintiff, in testifying on behalf of her application, did not mention her son's health, she did so on rebuttal and stated the boy has been very healthy and normal and that a change took place in his physical condition after the tonsillectomy, although he has had two colds last winter and had to remain home from school.

Section 213, Civil Code, provides: "A parent entitled to the custody of a child has a right to change his residence, subject to the power of the proper court to restrain a removal which would prejudice the rights or welfare of the child." (*Heinz* v. *Heinz,* 68 Cal.App.2d 713 [157 P.2d 660]; *Luck* v. *Luck,* 92 Cal. 653 [28 P. 787].) Although plaintiff has always had physical custody of the child, at the divorce hearing she voluntarily agreed to be bound by the order preventing her from taking the boy out of California. There is a conflict in the evidence as to exactly what was said, but it is clear that the day after the divorce was granted, plaintiff called defendant and indicated she expected at some time in the future to take the child to live with her family in Connecticut.

■ Under ordinary circumstances, a mother having custody of a child should be permitted to move about freely, and any unnecessary or arbitrary restriction on her residence is unreasonable. The fact that by the child's removal from the state the father may be deprived of his visitation rights is generally not alone sufficient to justify restraint on the mother's free movement unless the latter is inconsistent with the welfare of the child. (*Ward* v. *Ward,* 150 Cal.App.2d 438 [309 P.2d 965]; *Shea* v. *Shea,* 100 Cal.App.2d 60 [223 P.2d 32].)

■ Considering first the cause of plaintiff's proposed move, the record is bare of a more compelling reason than that plaintiff wants to live near her family and have her son share their affection. The evidence shows no real financial, employment, educational, health, or housing consideration involved in plaintiff's proposed move; and indeed, had not the

father advised the court of his son's serious health problem, we would not have known the probable danger involved in such a move. We are at a loss to understand the mother's failure to first mention this all-important consideration. We have thoroughly searched the record before us and cannot see how the extensive unimpeached and uncontradicted testimony of Dr. Thom, the boy's present doctor, can be ignored. Both he and the New York doctors claim the child's asthmatic and pneumonia attacks will be less frequent and less serious in California's drier climate. The boy was subject to recurrent attacks in New York, and the year before he came to California he had undergone three serious ones. It is apparent from all who testified, including plaintiff, that Nathan has greatly benefitted from California's climate, has gotten stronger and is now a fairly healthy boy. His improved health is no doubt due to the temperate climate and the fact he is growing older. All of the doctors agree it would be better for the boy to remain in California, and all recommend he should not be returned to the East. This consideration, together with the close and friendly relationship between the child and his father, as compared with the mere desire of plaintiff to live with her mother and to acquaint the boy with her mother's relatives, leads us to conclude that the substantial evidence in this case overwhelmingly supports the obvious fact that the welfare of the child would not be served by permitting his removal at this time from a climate in which he is now doing well physically.

In addition—the defendant is a father truly interested in the welfare of his son, faithful in supporting the boy and willing and able to spend as much time with him as the court order permits. Much could be said on the point of depriving a boy 8½ years of age of an affectionate and interested father in favor of his mother's relatives who have not seen the child for three years and who know little of him.

There is here no question of unfitness of either parent and unquestionably a child of Nathan's age should have the care of his mother. This no one seeks to alter. Also it must be recognized that ordinarily the one who has custody has the right to live with the child wherever he or she chooses, but the great weight of the evidence in the case at bar, including the uncontradicted testimony relating to the boy's health and his close relationship with his father, in the absence of a more compelling reason for plaintiff's move than her personal convenience and the boy's benefit of her family's association, far

from justifies a modification of the order preventing Nathan's removal from California, to which order both parties agreed not six months before. The substantial evidence in this case supports the conclusion that the detriment to the child's health and welfare which is likely to result from his return to the East, and the deprivation of his father's association greatly outweighs any advantage to the boy or his mother of being near her family.

Any argument that a medical examination of the boy every four months to advise defendant whether his son's health is in danger would be of benefit to the child is unrealistic and of little real protection to him for the reason that, due to the inclement eastern weather, his age, his present susceptibility to both asthmatic attacks and bronchial pneumonia or infection, and the fact that each time he develops a respiratory infection it immediately goes to his lungs, there would be little advance notice of any illness; and if under such circumstances defendant must bring an application to modify the custody order to return the boy to California and wait the necessary time for hearing and possible appeal, the child's health could be severely damaged. We conclude that the trial court abused its discretion in modifying the interlocutory judgment.

We agree with respondent that questions concerning the reason the parties came to California in 1954, who was responsible for the separation and whether plaintiff was properly supported before the court order, and the circumstances surrounding stipulation to the restraining order, are immaterial to the issues here on appeal.

The trial court has continuing jurisdiction of the matter of custody and in the future, when the boy is older, stronger, and better able to withstand the eastern climate, if circumstances arise justifying the move, the court may, on proper application, permit his removal. (*Ward* v. *Ward,* 150 Cal. App.2d 438 [309 P.2d 965]; *Shea* v. *Shea,* 100 Cal.App.2d 60 [223 P.2d 32].)

For the foregoing reasons the order is reversed.

White, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 1, 1959. Traynor, J., was of the opinion that the petition should be granted.