[Civ. No. 24549.   Second Dist., Div. Two.   May 31, 1960.]

CHARLOTTE V. ROSIN, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; VICTOR M. ROSIN, Real Party in Interest.

Hahn, Ross & Saunders for Petitioner.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, and Edward A. Nugent, Deputy County Counsel, for Respondent.

Mitchell, Silberberg & Knupp, Chester I. Lappen and Howard S. Smith for Real Party in Interest.

ASHBURN, J. — Through certiorari petitioner seeks to annul a judgment of contempt rendered against her as a consequence of her removal to Florida of the two children of her marriage with Victor M. Rosin, the real party in interest, which removal was made with the intent and effect of depriving the father of the exercise of his own part-time custody and visitation rights.

Interlocutory decree of divorce was rendered in favor of plaintiff wife (petitioner herein) on February 13, 1959. It divides the custody of the two children, boy and girl aged 10 and 8 years, as follows: "IT IS FURTHER ADJUDGED, ORDERED AND DECREED that plaintiff have the care and custody of the two minor children of the parties hereto, namely: Steven V. Rosin, born December 1, 1948, and Benita B. Rosin, born June 6, 1950, with the following reasonable visitation by defendant: he have the children with him on alternate Saturdays and Sundays commencing Sunday, March 1, 1959, from 8:30 a. m. to 7:00 p. m., provided he gives plaintiff 24 hours notice of his intention to have them with him; defendant have said

children with him the first two weeks in July and the first two weeks in August of each year commencing in 1959, provided he gives plaintiff 10 days notice in writing of his intention to take the children during said period; defendant be permitted to call said minor children by telephone once each evening.'' The parties were then and thereafter residents of California and complied with the terms of the decree until November 14, 1959, some nine months, when petitioner left her home in Los Angeles taking the children with her to Palm Beach where she established a new and permanent home. This was done without the knowledge or consent of the father (herein sometimes referred to as respondent) and with the intent of depriving him of his periodical custody of the children and his right of telephonic visitation with them every evening. Respondent, after locating petitioner and the children and becoming satisfied that this was more than a temporary absence from California, initiated a contempt proceeding against petitioner which resulted, after a hearing which she did not attend in person, in an order of January 28, 1960, containing the following: ''. . . The Court finds that plaintiff had knowledge of the order regarding specific visitation rights of defendant with the children; that she had the ability to comply with the Court order; that she failed to comply with the Court order and that said failure was a wilful failure and was done for the purpose of depriving defendant of his rights of reasonable visitation; plaintiff is therefore adjudged in contempt of Court. Continued to April 13, 1960 at 1:30 p. m. for pronouncement of sentence. . . .'' Before April 13th, the date set for sentencing, Mrs. Rosin filed her petition for certiorari in this court and same was granted. The matter is now before us for determination of a jurisdictional challenge directed to the contempt judgment.

The affidavit initiating the proceeding is challenged upon the ground that it does not state facts sufficient to show a contempt. Made by Mr. Rosin it alleges the fact of the divorce decree, quotes its custody provisions as above set forth, and alleges that the wife has ''wilfully deprived me of my visitation rights and my rights to communicate with or see my children, Steven, age 11 and Benita, age 9. In the second week of November, 1959, she removed the children from the State of California without my knowledge or consent and with the intent of preventing the exercise of my visitation and communication rights. Since then the children have been kept out of the state. I have been wilfully prevented from having

490

any communication with them, and my visitation and communication rights have been destroyed by the plaintiff." The affidavit also alleges that petitioner had and has knowledge of the decree and its quoted provisions concerning custody of the children. Of course the contempt affidavit must state facts which unambiguously spell the commission of a contempt. Unless the major point raised by petitioner and hereinafter discussed is upheld this affidavit is sufficient. In other words, if removal of the children to a distant state for the specific purpose and with the intent and effect of depriving the father of his temporary custody and his visitation rights constitutes a contempt, this affidavit sufficiently avers all the constituent facts.

It has been suggested that the allegation of petitioner's intent in removing the children from the jurisdiction is only a conclusion. The authorities are to the contrary. (See *Woodroof* v. *Howes,* 88 Cal. 184, 190 [26 P. 111]; *Hall* v. *Mitchell,* 59 Cal.App. 743, 749 [211 P. 853]; 2 Witkin, California Procedure, § 360, p. 1339.) The averment in question is that Mrs. Rosin "removed the children from the State of California without my knowledge or consent and with the intent of preventing the exercise of my visitation and communication rights." This is an allegation of fact, not a mere conclusion.

The evidence clearly establishes the truth of the allegations of the affidavit and the case resolves itself into a basic question of whether destruction of custody and visitation rights in the manner found here does constitute a contempt, or whether the failure of the interlocutory decree to specifically state that the children shall not be removed from the state without consent or court order leaves the parent who happens to have custody on a particular day free to completely frustrate and destroy the rights of the other parent—whether inferences or implications from the language of the judgment must be totally disregarded in a contempt proceeding even though that inference or implication be an inevitable one.

Petitioner's counsel rely upon authorities to the effect that no intendments or presumptions can be indulged in aid of a charge of constructive contempt (e.g., *Warner* v. *Superior Court,* 126 Cal.App.2d 821, 824 [273 P.2d 89]; *Frowley* v. *Superior Court,* 158 Cal. 220, 224 [101 P. 817]). This phraseology, which has crept into numerous appellate decisions, has led to a dissecting and segmental interpretation of contempt charges to such a degree that trial courts have

been well-nigh denuded of their contempt powers, a tendency which should not be fostered or furthered. Of course there is no presumption of contempt, but intendments are quite another thing. ▇ Ordinarily that word connotes "true meaning." "INTENDMENT. True intention or meaning; specifically used of a person, or a law, or of any legal instrument." (46 C.J.S. p. 1102.) But the term as used in the Warner and like decisions seems not to have that signification.
▇ "A word," says Mr. Justice Holmes in *Towne* v. *Eisner,* 245 U.S. 418, 425 [38 S.Ct. 158, 62 L.Ed. 372], "is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." The word "intendment" may have an archaic and technical meaning which is thus defined in *Detroit L. & N. R. Co.* v. *McCammon,* 108 Mich. 368 [66 N.W. 471, 473] : "The meaning of intendment is that, allowing an averment to be true, but that at the same time a case may be supposed consistent with it which would render the averment inoperative as a full defense, such case shall be presumed, unless specifically excluded by particular averment." If that technical meaning be attributed to the word "intendment" as used in the Warner and similar opinions, there can be no objection to the assertion that no intendments can be indulged in favor of a contempt charge. That is likewise true if given the meaning which Ballentine's Law Dictionary attributes to "intendment of law," viz.: "A presumption of law; legal meaning; meaning peculiar to the law." (P. 668.) The rule seems to be more aptly phrased in *Plummer* v. *Superior Court,* 20 Cal.2d 158, 164 [124 P.2d 5], wherein it is said that the rights of the parties "should not rest upon implication or conjecture, but the language declaring such rights or imposing burdens should be clear, specific and unequivocal so that the parties may not be misled thereby." This language was adopted in *Foust* v. *Foust,* 47 Cal.2d 121, 124 [302 P.2d 11]. Its true import seems to be found in the following quotation from *Terminal Railroad Assn.* v. *United States,* 266 U.S. 17, 29 [45 S.Ct. 5, 69 L.Ed. 150] : "In contempt proceedings for its enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought; and the

492

facts found must constitute a plain violation of the decree so read."

*Katenkamp* v. *Superior Court,* 16 Cal.2d 696, 699 [108 P.2d 1], phrases the matter as one of ambiguity. [5] Indeed, *Selowsky* v. *Superior Court of Napa Co.,* 180 Cal. 404 [181 P. 652] says, at page 407: "[A]n affidavit charging the commission of a contempt need not be more specific in its averments of the facts constituting the contempt than a complaint or an information charging a crime." And at page 408: "The allegations of Kelton's affidavit that he knew of his own knowledge that the premises in question were in the possession of the petitioner and were being used and conducted by her as a place of lewdness, assignation, and prostitution stated an essential and ultimate fact." The affidavit was held sufficient.

Concerning the word "implication," Ballentine's Law Dictionary says: "Some degree of implication must be given to words. Implication is but another term for meaning and intention, apparent in the writing, on judicial inspection; the evident consequence, or some necessary consequence resulting from the law, or the words of an instrument, in the construction of which the words, the subject, the context, the intention of the person using them, are all to be taken into view." That necessary inferences or implications (terms which ordinarily have the same meaning) are recognized as proper components of interpretation of decrees and orders in contempt proceedings (as in all other cases), has been repeatedly exemplified by California decisions. (*City of Vernon* v. *Superior Court,* 38 Cal.2d 509, 516 [241 P.2d 243]; *Hume* v. *Superior Court,* 17 Cal.2d 506, 513 [110 P.2d 669]; *In re Jarvis,* 57 Cal.App. 533, 538 [207 P. 494]; *Francis* v. *Superior Court,* 3 Cal.2d 19, 31 [43 P.2d 300].) To the same effect see *McComb* v. *Jacksonville Paper Co.,* 336 U.S. 187 [69 S.Ct. 497, 93 L.Ed. 599], wherein it is said at page 192: "It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law which we condemned in *Maggio* v. *Zeitz, supra* (333 U.S. at 69 [92 L.Ed. 487, 68 S.Ct. 401]). The instant case is an excellent illustration of how it could operate to prevent accountability for persistent contumacy. Civil contempt is avoided today by

showing that the specific plan adopted by respondents was not enjoined. Hence a new decree is entered enjoining that particular plan. Thereafter the defendants work out a plan that was not specifically enjoined. Immunity is once more obtained because the new plan was not specifically enjoined. And so a whole series of wrongs is perpetrated and a decree of enforcement goes for naught.

"That result not only proclaims the necessity of decrees that are not so narrow as to invite easy evasion; it also emphasizes the danger in the attitude expressed by the courts below that the remedial benefits of a decree will be withheld where the precise arrangement worked out to discharge the duty to pay which both the statute and the decree imposed was not specifically enjoined."

*Lineker* v. *Dillon* (No. Dist. Cal., Van Fleet, Judge), 275 F. 460. In this instance the defendants procured a stay of execution upon a judgment rendered against them and while it was in effect removed their property beyond the reach of process. The court said, in part: "This stay order was not a matter of right in the defendants, but was purely discretionary with the court and intended only to maintain the rights of the parties in statu quo pending steps for a new trial or appeal as they might be advised. Both parties were charged as a matter of law with a knowledge of this purpose, and that neither was rightfully at liberty during the existence of the order to take any steps intended to impair the rights of the other under the judgment; and *these things were as plainly implied from this order as though written into it in express terms.*

"When, therefore, the respondents undertook to render this judgment nugatory and valueless by lending their aid to remove the only tangible property of the judgment debtor beyond the reach of process, they were as guilty of violating the court's order as though it had forbidden their acts in positive terms, and under well-established principles their acts constituted a contempt of the court." (P. 470.) (Emphasis added.)

That proper construction of custody provisions in divorce decrees involves recognition of inevitable inferences appears from the following decisions.

*Weeks* v. *Superior Court,* 187 Cal. 620 [203 P. 93]. The case arose upon petition for mandate to compel respondent court to grant the petitioner a final decree of divorce. The

interlocutory had awarded custody and control of the minor child to the husband. "On the day of the trial, and after the decree was granted, the petitioner, without the consent or permission of the court or of the plaintiff in the action, removed the minor from the state, where she has kept the child ever since." (P. 621.) At page 622, the court said: "We think the respondent was right in refusing to enter the final decree of divorce. Section 132 of the Civil Code provides that when one year has expired after the entry of the interlocutory decree the court, on motion of either party, or upon its own motion, may enter the final judgment granting the divorce. But that does not mean that a party to the action may have a final decree entered when to do so would be a flagrant abuse of the principles of equity and of the due administration of justice. . . . No party to an action can, with right or reason, ask the aid and assistance of a court in hearing his demands while he stands in an attitude of contempt to its legal orders and processes." At page 623: "So, in this case, the petitioner has treated the order of the court with contempt and removed herself and the minor from the jurisdiction so that it cannot be enforced. She should not be allowed to make application for final decree of divorce until she has submitted to the lawful order of the superior court in relation to the custody of the child of the parties to the action or otherwise purged herself of the contempt."

It will be noted that the petitioner's conduct did not violate any specific inhibition upon her taking the children and defeating the rights of the husband, but was directly in the teeth of the plain implication of the decree.

*In re Laham,* 145 Cal.App.2d 110 [302 P.2d 21]. Both parties to a divorce action were restrained "from annoying or molesting the other in any manner." The husband went to the wife's home and tried by force to take the minor children who had been awarded to the mother. It was found that he did through force take one of the children from her custody. He was adjudged guilty of contempt and sought habeas corpus, which writ, having been granted by the appellate court, was discharged.

In *Fay* v. *Fay,* 12 Cal.2d 279 [83 P.2d 716], the court modified the custody provision of the divorce decree because of the wife's obstructing the exercise of the rights of visitation and temporary custody awarded to the husband. The modification order was affirmed.

*Cole* v. *Superior Court,* 28 Cal.App. 1, 8 [151 P. 169], recog-

nized that an order directing a mother to send a child to the father at Stockton "necessarily implied the use of whatever effort and expense was required for the purpose." The opinion further said: "The order [of contempt] was sufficiently certain to be understood; it was disregarded by petitioner; it was competent under the evidence for the court to determine that the disobedience was willful, and, while a decision in favor of petitioner would have been supported, we do not see how it can be held that the superior court exceeded its jurisdiction in making the order complained of."

*Williams* v. *Williams,* 103 Cal.App.2d 276 [229 P.2d 830], involved an appeal from an order of the trial court modifying an interlocutory decree of divorce by granting plaintiff One Dollar per month for her maintenance and support instead of $100 per month as originally specified in the interlocutory decree. At page 278 the court said: "*Did the trial court err in reducing the amount of alimony awarded to plaintiff from $100 per month to $1.00 per month? No.* The evidence disclosed that after the trial plaintiff removed the minor children of the parties from the state so that defendant could not have the opportunity of visiting his children and having their custody on alternate weekends. Therefore the trial court in endeavoring to have plaintiff comply with the provisions of the interlocutory decree properly reduced the amount of alimony she was to receive. (*Fay* v. *Fay,* 12 Cal.2d 279, 282 [83 P.2d 716]; *cf. Gury* v. *Gury,* 219 Cal. 506, 507 [27 P.2d 758].) It thus appears that the trial court did not abuse its discretion in making the order here questioned." The removal of the children from the jurisdiction was not the violation of a specific prohibition of such conduct but did transgress a plainly implied term of the custody decree. Examination of the record in that case discloses that the interlocutory decree contained the following custodial and visitation provisions: "IT Is FURTHER ADJUDGED that plaintiff shall have the custody of the minor children of the parties hereto, subject to the right of the defendant to visit and have possession of said children on alternate week ends as follows, and subject to the following conditions: 1. That defendant shall alternately visit and have possession of Lynda Williams and Chris Williams during and at one visitation period, and Dianne Williams and Billie Williams during and at the next or following visitation period; 2. That defendant shall pick up said children not earlier than ten o'clock saturday morning at plaintiff's residence and return said children not later than 4:30 p.m. Sunday afternoon

to plaintiff's residence." The only difference between this case and the one at bar is that the wife in Williams was deprived of all alimony except One Dollar by way of penalty for defeating the husband's rights by removing the children from the state, while in the case at bar she was held guilty of contempt. In this connection see also *Gudelj* v. *Gudelj*, 41 Cal.2d 202, 209 [259 P.2d 656].

There seems to be no sound reason for holding that a judgment means one thing for purposes such as those of the cases just reviewed but a different meaning for purposes of enforcement through the contempt process.

The terms of the Rosin decree presuppose that the mother will have the children at the times that the father wants them for alternate Saturdays and Sundays and for bi-weekly periods in July and August; provides in express terms that the father's right is conditioned upon his giving the mother 24 hours advance notice in the one instance and 10 days in the other. The least this can mean is that the mother, being apprised in advance, cannot interfere with the father's taking the children. The phrase "defendant be permitted to call said minor children by telephone once each evening" plainly means that the mother shall not interfere with such telephone calls. Removing the children some 2,500 miles away and converting the daily telephone calls into long distance communications inevitably destroys for all practical purposes the father's custody and visitation. At the contempt hearing the following exchange occurred: "THE COURT: What is the difference between this and where—for instance, a husband is given physical custody of the minor children on alternate weekends, and he goes out, and every time he goes out to pick up the children on alternate weekends, she says, 'You can't have them.' Now, there is no question that you can come in on an Order to Show Cause re contempt on a case like that, but how is it different than a case where someone takes the children and places them in a locality which is so far removed that it is, to all practical purposes, impossible to see the children at all. MR. ROSS: Your Honor, there is a big difference, because there is no willful desire to deprive these children of the right to be with their father at all." The court found that that was petitioner's desire and specific intent. Upon oral argument in this court counsel for petitioner admitted that a situation such as postulated by the trial judge would amount to a contempt. How then does it cease to be one when the same result is accomplished by some other means specifically intended to accomplish that end?

We do not consider that *Hotaling* v. *Superior Court of San Francisco,* 191 Cal. 501 [217 P. 73, 29 A.L.R. 127], is opposed to the views just expressed, for it was concerned with a discussion of what constituted a violation of the terms of a specific court order or decree. It does not exclude the idea of recognition in contempt of the necessary implications of the court order upon which the contempt is founded. At page 509 it is said: "Assuming that a contempt can be predicated upon the nonperformance of a requirement which is *implied* but not expressed by the terms of the original order, the most that can be fairly implied herein is that the defendants were required to transfer the stock upon the corporate books *into the name of Mrs. Hotaling,* so that she could have complete possession thereof. But they are not in default in this respect, because they have never been given an opportunity so to do."

Petitioner relies upon certain cases which hold that one parent who is entitled to custody of the children is not guilty of contempt or other wrongful conduct in removing the children from the state and establishing a new home elsewhere in circumstances where there is no specific prohibition in the custody order and where frustration of the other parent's visitation rights was not the specific intent of the removal. Such cases are *Beabout* v. *Beam,* 119 Cal.App.2d 768, 772 [260 P.2d 145]; *In re Dowell,* 4 Cal.App.2d 688, 689 [41 P.2d 596]; *Dozier* v. *Dozier,* 167 Cal.App.2d 714, 719 [334 P.2d 957]. It should be noted that there was not present in any of those cases a specific intent to deprive the other spouse of his or her custody or visitation rights, nor did the circumstances create an inevitable inference that the decree forbade the removal of the children. The interference with visitation rights was merely incidental to a removal made for legitimate reasons, not for the specific intent of defeating the rights of the other spouse.

Certain other cases which are predicated upon an application of section 213, Civil Code, fall in this same category. That section says: "A parent entitled to the custody of a child has a right to change his residence, subject to the power of the proper court to restrain a removal which would prejudice the rights or welfare of the child." It is general in terms and application and appears in the title defining relations between parent and child. It has no direct application to divorce and should not be held controlling in the face of a divorce decree which specifies what the future relationship shall be in the given instance. Such cases as *Shea* v. *Shea,* 100

Cal.App.2d 60 [223 P.2d 32]; *Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202; *Gantner* v. *Gantner,* 39 Cal.2d 272 [246 P.2d 923]; and *White* v. *White,* 68 Cal.App.2d 650 [157 P.2d 415], deal with questions of what the court may do in the way of affirmatively forbidding removal from the state; they do not hold that section 213 governs the rendition of a divorce decree; nor do they decide that the parent is entitled to determine, contrary to express or implied terms of the decree, what is best for the child.

Thus far the case has been discussed upon the theory presented by counsel that petitioner's removal of the children was or was not a violation of express terms of the court order or decree, but it has another aspect that should not be ignored. Section 1209, Code of Civil Procedure not only makes "[d]isobedience of any lawful judgment, order, or process of the court" (subd. 5) a contempt, but also, "[a]ny other unlawful interference with the process or proceedings of a court" (subd. 8). This latter subdivision is broad and expansive, designedly so. The fact is exemplified by these cases.

*Ex parte Kellogg,* 64 Cal. 343 [30 P. 1030], held that one who disposed of his property for the purpose of disabling himself to comply with an order which he *anticipated* would be made in a supplementary proceeding was properly adjudged guilty of contempt.

*Falloon* v. *Superior Court,* 79 Cal.App. 149, 156 [248 P. 1057] : "A person may be found guilty of contempt if he actively interferes in a pending action to frustrate any order which may be made therein to establish or secure an asserted estate or right. Such conduct constitutes an 'unlawful interference with the . . . proceedings of a court,' within the meaning of subdivision 9 of section 1209 of the Code of Civil Procedure. (See *Ex parte Kellogg,* 64 Cal. 343 [30 P. 1030]; *Derryberry* v. *Derryberry,* 8 Tenn.Civ.App. 401; *In re Rice,* 181 F. 217; *Bartholomay Brewery Co.* v. *O'Brien,* 172 App.Div. 784 [159 N.Y.Supp. 126].)"[1]

*Cantillon* v. *Superior Court,* 150 Cal.App.2d 184, 187 [309 P.2d 890] : "An inexcusable failure to comply with the rules or orders made by a court pertaining to the orderly conduct of judicial proceedings before it constitutes an unlawful interference with the proceedings of the court (Code Civ. Proc., § 1209, subd. 8), and by appropriate proceedings is punishable as a contempt of the authority of the court."

[1]Originally subdivision 9 of section 1209, Code of Civil Procedure, read as does subdivision 8 at this time.

*Hollar* v. *Superior Court,* 140 Cal.App. 231, 234 [35 P.2d 417], holds that unauthorized interference with property in the custody of a receiver is an interference with the proceedings of the court. (See also 12 Am.Jur. § 24, p. 406.)

Though court and counsel have treated the instant case as one involving only disobedience of a lawful order of court, that concept is not quite complete. Mr. Rosin's rights are not primarily those of visitation. The judgment divides the custody, giving it to him for 26 weekends and an additional four full weeks in the summer of each year, plus visitation by telephone. If it be assumed that Mrs. Rosin is not obligated to prepare the children to go with their father or to personally deliver them into his care, he nevertheless is entitled to take them into his custody at the appointed times and she may not lawfully interfere with that; the custody order is continuous in its operation and in legal contemplation any obstruction to the exercise of respondent's rights is an unlawful interference with the proceedings of the court. Though petitioner may not be obligated to open the door for the father when he comes for the children, she cannot lock it and thus prevent his exercising his right to temporary custody; that would be interference with the proceedings of the court. If she takes the children 2,500 miles away and thus prevents his taking custody she has again interfered with the court's proceedings.

In another sense such removal would be an interference with the proceedings of the court. After divorce rendered the court has continuing jurisdiction over the custody and support of the children (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 209; *Ward* v. *Ward,* 150 Cal.App.2d 438, 442 [309 P.2d 965]), and the order at bar is a continuing order authorizing the father to take charge of the children at specific intervals. Continuing jurisdiction implies power to change the decree to the extent of giving the children to the father for half the year or even the entire year.

But the jurisdiction is gone for all practical purposes when the children are living in another state, for no effective order can be made modifying the custody provisions of the decree. In this instance the Florida courts can reexamine the matter and, if convinced that the welfare of the children requires it, may give exclusive custody to the mother. Meantime, the hands of the California courts are tied because the mother has taken the children to Florida and established that state as their home. When that is done for the specific purpose of terminating the custodial and visitational rights of

the other parent conferred upon him by judgment of the California court, that amounts to an interference with the proceedings of the California courts.

We conclude that the adjudication of contempt was not made in the absence or in excess of jurisdiction. The writ heretofore issued herein is discharged.

Fox, P. J., concurred.

KINCAID, J. pro tem.*—I dissent.

The principal question presented is whether the respondent court had jurisdiction to adjudge petitioner to be in contempt for violation of the father's visitation rights where the judgment awarded custody of the children to her but did not specifically prohibit her from removing the children from California.

The judgment provided that the father should have certain reasonable visitation rights, namely: to have the children with him on alternate Saturdays and Sundays and during the first two weeks in July and in August of each year, and to telephone the children once each evening. Other than as may perhaps be possibly implied from said provisions relating to the father's visitation rights, the said divorce decree did not contain any provisions prohibiting petitioner from removing the children from California, nor requiring her to obtain the approval of the court or of the father before so doing.

Some nine months after entry of the judgment, petitioner, with the children, moved from California to Florida without seeking approval of the court or of the father, and with the intention of making her permanent residence in Florida.

Following petitioner's removal with the children to Florida, the father sought and secured an order directing petitioner to show cause why she should not be adjudged in contempt for wilfully disobeying the provisions of the judgment granting visitation rights. In the father's affidavit setting forth the alleged contempt, the only facts averred, disregarding mere conclusory statements and formal matters, were: "In the second week of November, 1959, she [petitioner] removed the children from the State of California without my knowledge or consent and with the intent of preventing the exercise of my visitation and communication rights. Since then the children have been kept out of the state."

The respondent court, after a hearing of the matter and

---

*Assigned by Chairman of Judicial Council.

after first finding that petitioner had knowledge of the order relative to the father's specific visitation rights and that she had the ability to comply therewith, found that petitioner had failed to comply with said order providing for specific visitation rights, that her failure was a wilful failure and was done for the purpose of depriving the father of his right of reasonable visitation.

Thereupon, the respondent court adjudged petitioner in contempt of court and the petition to review such contempt order followed.

It is clear that the primary act of alleged contempt charged in the supporting affidavit consisted in petitioner's removal of the children from the state, thereby incidentally hampering or depriving of visitation rights. The crucial question presented is, therefore, whether petitioner committed any illegal act or contempt in moving with the children from California to Florida.

Section 213, Civil Code, provides: ''Right of parent to determine the residence of child. A parent entitled to the custody of a child has a right to change his residence, subject to the power of the proper court to restrain a removal which would prejudice the rights or welfare of the child.'' This section has stood without amendment since 1872 and clearly entitled a parent having legal custody of a child to change the place of residence of said child to a location either in or out of the state, subject only to an order of a proper court restraining such a removal.

In *Dozier* v. *Dozier*, 167 Cal.App.2d 714, 719 [334 P.2d 957], applying section 213, Civil Code, the court said: ''Under ordinary circumstances, a mother having custody of a child should be permitted to move about freely, and any unnecessary or arbitrary restriction on her residence is unreasonable. The fact that by the child's removal from the state the father may be deprived of his visitation rights is generally not alone sufficient to justify restraint on the mother's free movement unless the latter is inconsistent with the welfare of the child.''

It is the rule in California and the majority modern rule in other jurisdictions that a parent to whom the custody of the children has been awarded commits no illegal act nor contempt in removing the children from the state issuing the custody award, where the divorce decree or order awarding custody does not prohibit said parent from removing the children from said state. (*Beabout* v. *Beam*, 119 Cal.App.2d 768, 772 [260 P.2d 145] ; *In re Dowell*, 4 Cal.App.2d 688, 689 [41 P.2d

596] ; *Ex parte Vaughn,* 205 Ala. 296 [87 So. 792] ; *Barnes* v. *Lee,* 128 Ore. 655 [275 P. 661, 663] ; 17A Am.Jur. § 832, p. 24.)[1]

On review of contempt proceedings, '' [t]he question whether jurisdiction was exceeded includes . . . inquiry as to whether a contempt has in fact been committed.'' (12 Cal.Jur.2d 99, § 77; *In re Lake,* 65 Cal.App. 420 [224 P. 126].)

It would accordingly appear that the respondent court exceeded its jurisdiction in holding petitioner to be in contempt for the reason that the only act of alleged contempt charged in the affidavit consisted in petitioner's intentional removal of the children from California, and for the further reason that petitioner committed no illegal act nor contempt in so doing since the divorce decree did not prohibit such removal.

It is, however, further urged that, while the interlocutory judgment did not expressly prohibit the removal of the children from California, the provisions relating to the father's visitation rights by necessary implication prohibited the removal of the children from this state.

It seems sufficient to observe that the order at bench is a contempt proceeding, criminal in nature and the prescribed procedural safeguards must be accorded the alleged contemner. (*City of Culver City* v. *Superior Court,* 38 Cal.2d 535, 541 [241 P.2d 258].) The prime purpose of such proceedings is punishment for disobedience of a valid order directing performance of a specified act. A charge of contempt cannot be established for failure to comply with uncertain orders or judgments, or possible implications thereof. Liability should not rest upon implication or conjecture but rather upon an order expressing in clear, specific and unequivocal language the act required. (*Foust* v. *Foust,* 47 Cal.2d 121, 124 [302 P.2d 11].)

It may be that the removal of the children from California constitutes a change of circumstances which would justify the superior court on proper petition and showing therefor to make order modifying the interlocutory judg-

---

[1]It is also established that, even where the original decree awarding custody prohibited the removal of the children from the state or required court approval therefor, removal of the children from the state may be authorized and permitted upon proper showing and for sufficient cause. (*White* v. *White,* 68 Cal.App.2d 650 [157 P.2d 415]; *Shea* v. *Shea,* 100 Cal.App.2d 60, 63-64 [223 P.2d 32]; 154 A.L.R. 552, 564-570.) In the Shea case, it is questioned whether a court has any power to make an order prohibiting the custodial parent from removing the children from the state, at least in the absence of affirmative finding that removal from the state would prejudice the children's welfare.

ment, even to the extent of reducing the award of alimony to petitioner. (*Williams* v. *Williams,* 103 Cal.App.2d 276, 278 [229 P.2d 830].) However, a proceeding in contempt is essentially different; and an order adjudging a person in contempt can only be upheld where the acts charged in the affidavit show that a contempt in fact and in law has been committed.

Additionally, it is impliedly contended that the order of the respondent court cannot be disturbed because it was averred in the father's affidavit that petitioner removed the children from California "with the intent of preventing the exercise of my visitation and communication rights" and because the respondent court found that petitioner's failure to comply with the order relating to the father's visitation rights "was done for the purpose of depriving defendant [the father] of his right to reasonable visitation."

The majority opinion assumes and relies upon a specific intent upon the part of petitioner to deprive the father of his visitation rights. The finding of the trial court to that effect, however, is based entirely upon the averment in the father's affidavit that the children were removed from the state "with the intent of preventing the exercise of my visitation and communication rights." This averment was a mere conclusion and there was no evidence supporting the respondent court's finding that petitioner's actions were done for that purpose. In fact, the only evidence relating to petitioner's intent was her counteraffidavit to the effect that it was necessary for the children's welfare to remove them from California because other children and persons were constantly questioning them about the scandalous charges made in the divorce action between the parties. Granting that the respondent court did not have to give credence to petitioner's counter averments, there was no other evidence relating to petitioner's intent in removing the children to Florida. Since petitioner had the legal right to remove the children to a new home in another state she could not be found in contempt for merely harboring or having an intent to deprive or hamper the father in his incidental visitation rights.

Further contention is also made that the father's testimony at the hearing showed that petitioner did not inform him of her Florida telephone number until some six weeks

after her removal; that, on one occasion shortly after her removal to Florida, she refused to accept his telephone call; and that there was therefore evidence in support of the court's finding that petitioner had failed to comply with the order relating to his visitation and communication rights.

It appears, however, that petitioner informed the father of her Florida address within a week or two after her removal to Florida, and that thereafter several weeks later she informed him of her Florida telephone number. Excepting for the distance and expense involved there is no further evidence to show that the children may not be visited by the father either personally or by telephone, nor that he may not have them with him in California in July and August as defined in the judgment.

More important, the affidavit charging the alleged contempt did not aver or charge any offense for failure to furnish telephone number or to accept telephone call; and it is settled that the affidavit charging the contempt must state the facts constituting the offense, and that its insufficiency cannot be cured by facts proved on the hearing. (*Warner* v. *Superior Court*, 126 Cal.App.2d 821, 824 [273 P.2d 89].)

The father contends that, since the custody decree in the case at bar gave him specific visitation rights, such decree is distinguishable from the custody order in *Beabout* v. *Beam, supra,* 119 Cal.App.2d 768 (wherein the other parent was given the right to visit the children ''at reasonable times''); and that the custody order herein can only be construed as prohibiting the removal of the children from California. The claimed distinction is one without any real difference. In *Beabout* v. *Beam,* the parent, to whom the custody of the children had been awarded subject to the right of the other parent to visit them at reasonable times, moved with the children from Indiana to California. Such removal obviously impeded and made more difficult the Indiana parent's right to visit the children at reasonable times in substantially the same way as the removal of the children to Florida in the case at bar impeded and made more difficult the father's right herein to have the children with him at stated times and to telephone them each evening.

It is clear, therefore, that *Beabout* v. *Beam* is necessarily based on the fundamental proposition that *the parent awarded custody has the right to remove the children to another state where the custody order does not prohibit, even though the*

*visitation rights of the other parent may incidentally be impeded and made more difficult by reason thereof.*

*Cole* v. *Superior Court,* 28 Cal.App. 1 [151 P. 169], relied upon by the father and cited in the majority opinion is not in point. The custody order in Cole specifically ordered the mother, who had been awarded the custody of the minor child, to send the child to the father at Stockton during school vacation periods, if the father so requested. The mother wilfully disobeyed said specific order; and it was held that she had properly been adjudged guilty of contempt. There was obviously a clear violation of a specific and definite order commanding the mother affirmatively to perform a stated act. On the contrary, the custody decree in the case at bar did not prohibit the mother from removing with the children from California nor did it affirmatively command her to perform any specific act.

As there is no appeal from an order made in a contempt proceeding, it may be reviewed and annulled upon certiorari if it is in excess of jurisdiction. (*Freeman* v. *Superior Court,* 44 Cal.2d 533, 536 [282 P.2d 857] ; *Weber* v. *Superior Court,* 26 Cal.2d 144, 148 [156 P.2d 923].)

I am satisfied that the act of petitioner in removing the children from the state, although incidentally impeding the father's visitation privileges, falls short of a direct violation of the terms of the interlocutory judgment and therefore respondent court exceeded its jurisdiction in adjudging her in contempt. The contempt order should be annulled.

A petition for a rehearing was denied June 24, 1960, and the petition of the real party in interest for a hearing by the Supreme Court was denied July 27, 1960.