[No. B164361. Second Dist., Div. Eight. Jan. 7, 2004.]

PASADENA LIVE, LLC, Plaintiff and Appellant, v.
CITY OF PASADENA, Defendant and Respondent.

## Counsel

Levinson, Kaplan, Arshonsky & Kurtz, Robert A. Levinson and Stuart L. Leviton for Plaintiff and Appellant.

Gibbs, Giden, Locher & Turner, Barbara Gadbois and Eric L. Troff for Defendant and Respondent.

## Opinion

**FLIER, J.**—Pasadena Live, a limited liability company, brought an action for breach of contract against the City of Pasadena (City). City's demurrer to the second amended complaint was sustained without leave to amend on the ground that Pasadena Live had not alleged that City breached the contract.

Pasadena Live appeals. We reverse because the second amended complaint alleges that City has breached the covenant of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Rest.2d Contracts, § 205.) The trial court erred in sustaining the demurrer because the alleged breach of the covenant of good faith and fair dealing constitutes a breach of contract for which Pasadena Live may recover damages.

After Pasadena Live voluntarily withdrew its original complaint, Pasadena Live filed a first amended complaint that alleged two causes of action.

The first cause of action for breach of contract alleged that Pasadena Live and City had entered into a partly oral, partly written agreement "with respect to PASADENA LIVE's plans for renovating the AMPHITHEATER and leasing the AMPHITHEATER long-term to produce musical and/or comedy events." The complaint went on to allege that the parties had agreed "[i]n or about August 2000" that: (1) Pasadena Live would renovate the amphitheater at its own expense. (2) Pasadena Live would produce events in 2000 and 2001 and for an "unspecified number of years in the future." This item of the alleged agreement recited that Pasadena Live and City had discussed the former's need to lease the amphitheater for at least another five years. (3) Pasadena Live's acquisition of a long-term lease was an essential element of its agreement with City. (4) City would negotiate with Pasadena Live in good faith to enter into a long-term lease.

The first cause of action went on to allege that the parties had entered into an agreement on August 22, 2000, under which Pasadena Live agreed to pay City $114,550 for the initial renovations to the amphitheater. A copy of this agreement (hereafter the Written Agreement) was attached to the first amended complaint. The first cause of action concluded by alleging that five concerts had been performed in 2000 but that, ultimately, City had breached its obligations to Pasadena Live by not negotiating in good faith, by not dealing fairly, by refusing access to the amphitheater and by refusing to enter into a long-term lease with Pasadena Live.

The second cause of action of the first amended complaint alleged that Pasadena Live had expended funds at City's request, that City had benefited by the expenditure of these funds and that City had been unjustly enriched thereby. This cause of action sought restitution of the funds expended by Pasadena Live.

City demurred, in significant part on the ground that it was precluded by its charter from entering into oral agreements and that such agreements were therefore void and unenforceable. The court agreed and sustained the demurrer with leave to amend. Pasadena Live does not challenge the correctness of this ruling.

The second amended complaint, reduced to a single count for breach of contract, alleged that Pasadena Live, an event producer, wanted to renovate the Gold Shell Amphitheater located in City's Memorial Park so that it could produce musical and/or comedy events at the amphitheater and that City, lacking funds for the renovations, entered into the Written Agreement of

August 22, 2000, with Pasadena Live under which the latter would pay for 100 percent of the renovations. The complaint alleged that under the Written Agreement, Pasadena Live agreed to pay City $114,550 and that, also under the Written Agreement, City undertook to evaluate and process Pasadena Live's application for events on the same basis as applications made by other producers. The complaint expressly alleges that one of the "relevant provisions" of the Written Agreement was the covenant of good faith and fair dealing.

The complaint sets forth two internal memoranda generated by City's managing personnel, which reflect that City intended to negotiate a long-term licensing agreement with Pasadena Live. The complaint then summarizes three letters dated November 7, 2000, January 2, 2001, and February 15, 2001, in which City progressively backed away from, and then terminated, its relationship with Pasadena Live. On November 7, 2000, while acknowledging that the improvements paid for by Pasadena Live had benefited the City and the public, City wrote that Pasadena Live would have to obtain permits and clearances that were not required by the Written Agreement. On January 2, 2001, City warned that others were interested in the facilities that Pasadena Live had improved. Finally, on February 15, 2001, City notified Pasadena Live that City would not "authorize" any events produced by Pasadena Live in the year 2001.

The complaint alleges that Pasadena Live produced five concerts in the fall of 2000. The Written Agreement acknowledges that Pasadena Live proposed a series of up to 11 events in the amphitheater during the years 2000 and 2001. The complaint alleges that City breached the implied covenant of good faith and fair dealing by preventing Pasadena Live from producing six additional events.

City demurred. The court sustained the demurrer, principally on the ground that the complaint did not allege a breach of contract.

■ Under well-settled principles, for the purposes of testing the question of law raised, all material, issuable facts properly pleaded in the complaint are deemed admitted. (*Woodroof v. Howes* (1891) 88 Cal. 184, 189 [26 P. 111]; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329].) Thus, whether the Written Agreement will actually receive the construction following a trial that we place upon it here, including the construction of the meaning and effect of the covenant of good faith and fair dealing, we do not say. We hold, however, that for the purpose of determining whether the allegations of the complaint sufficiently set forth a breach of the covenant of good faith and fair dealing, we find that, deeming the allegations to be true, Pasadena Live has alleged a breach of the covenant of good faith and fair dealing.

The Written Agreement contemplated that Pasadena Live would submit applications for approval of events that Pasadena Live intended to produce. Section 3 of the Written Agreement reflected the parties' acknowledgment that Pasadena Live would apply for approval of its productions and section 10 reflected Pasadena Live's undertaking to seek and obtain all necessary permits for its productions. Under section 2 of the Written Agreement, license fees charged by City were to be credited against the payment of $114,550 by Pasadena Live to pay for improvements to the amphitheater. This provision envisioned that Pasadena Live would at least have the opportunity to apply for approval of its productions in order to seek to recoup its investment. Finally, the Written Agreement acknowledged that Pasadena Live proposed to produce 11 events. The period of time within which these productions were to take place is set forth in the Written Agreement. Under the terms of the Written Agreement, credit was to be given for license fees generated by events "which are approved and take place in calendar year 2000 or 2001."

"This covenant [of good faith and fair dealing] not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." (*Harm v. Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367], citing *Bewick v. Mecham* (1945) 26 Cal.2d 92, 99 [156 P.2d 757].) The Written Agreement under which Pasadena Live advanced $114,550 for improvements to City property, the amphitheater, envisioned future production by Pasadena Live, albeit there was no guaranty that any single or specific production proposed by Pasadena Live would be approved by City.[1] For future production to take place, Pasadena Live had to have at least the opportunity to *submit proposals* for such productions. However, City's letter of February 15, 2001, absolutely barred Pasadena Live from submitting any proposals.

Under the implied covenant of good faith and fair dealing, City was required "to do everything that the contract presupposes that [City] will do to accomplish its purpose." (*Harm v. Frasher, supra,* 181 Cal.App.2d at p. 417.) In the context of the Written Agreement, this meant that City was required to consider proposals submitted by Pasadena Live. Arguably, it was a breach of the covenant of good faith and fair dealing to deprive Pasadena Live of that opportunity.

---

[1] Section 3 of the Written Agreement specifically provided that Pasadena Live "understands and agrees" that the agreement "[did] not guarantee that any of its [Pasadena Live's] Events will be approved" and section 4 recited that Pasadena Live "has decided to book talent, concessionaires and other Event related services based upon its own business judgment and assessment of the risk and without relying on any representation or warranty by the City or any of its employees or agents."

"The implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." (1 Witkin, Summary of Cal. Law (2003 supp.) Contracts, § 743, p. 449.) Contrary to Pasadena Live's assertion, the Written Agreement did not give Pasadena Live a contractual option to produce 11 events in 2000 and/or 2001 nor did the Written Agreement obligate City to negotiate and conclude a production agreement with Pasadena Live. The actual terms of the Written Agreement control Pasadena Live's attempts to characterize the agreement. (*Nichols v. Canoga Industries* (1978) 83 Cal.App.3d 956, 965 [148 Cal.Rptr. 459].) The Written Agreement was an undertaking by Pasadena Live to fund improvements to City property. In return, City undertook to give Pasadena Live credit against license fees for its productions. While the covenant of good faith and fair dealing required that City would entertain applications submitted by Pasadena Live, the Written Agreement unambiguously provides that City does not promise or guaranty that it would approve the applications submitted by Pasadena Live. (See fn. 1, *ante*.) As noted, the covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, which in this case do not include an agreement on the part of City to approve productions by Pasadena Live or an agreement to enter into such an undertaking in the future.

Pasadena Live contends that it should be allowed to allege a cause of action for unjust enrichment. We disagree.

■ The first amended complaint contained a cause of action for unjust enrichment. The court sustained the demurrer to this cause of action because it was based on an oral contract. This ruling was correct. A public entity cannot be held liable on an implied-in-law or quasi-contract theory. (*Miller v. McKinnon* (1942) 20 Cal.2d 83, 87 [124 P.2d 34]; *Lundeen Coatings Corp. v. Department of Water & Power* (1991) 232 Cal.App.3d 816, 831, fn. 9 [283 Cal.Rptr. 551].) In any event, Pasadena Live conceded the matter when it filed the second amended complaint, which did not contain a cause of action for unjust enrichment. (*Sheehy v. Roman Catholic Archbishop* (1942) 49 Cal.App.2d 537, 541 [122 P.2d 60] [pleader's election to file amended pleading after court sustains demurrer confesses defect in the original pleading].)

The case is reversed and remanded to the superior court with directions to overrule the demurrer to the second amended complaint. Each party to bear its own costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied February 4, 2004.