**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AARON CAIN MCKNIGHT,
        *Petitioner-Appellant,*

v.

ADAM N. TORRES, U.S. Marshal,
        *Respondent-Appellee.*

No. 08-55459

D.C. No.
2:07-cv-05541

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
March 10, 2009—Pasadena, California

Filed April 20, 2009

Before: Michael Daly Hawkins, Marsha S. Berzon and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hawkins

## COUNSEL

William J. Genego, Nasatir, Hirsch, Podberesky & Genego, Santa Monica, California, for the petitioner-appellant.

Daniel Scott Goodman, Assistant United States Attorney, Deputy Chief, Criminal Division, Los Angeles, California, for the respondent-appellee.

## OPINION

HAWKINS, Circuit Judge:

In this international extradition case, Aaron Cain McKnight ("McKnight") appeals the denial of his 28 U.S.C. § 2241 habeas corpus petition, arguing the government violated the covenant of good faith and fair dealing implied in his immunity agreement with the United States Attorney's Office for the Central District of California (the "U.S. Attorney"). According to McKnight, he "reasonably expected" the government, having granted immunity from use of his incriminating admissions against him in any United States prosecution, would not disseminate his admissions to any foreign jurisdictions for prosecution abroad. Concluding the government's actions did not violate the immunity agreement, we affirm.

## I.  BACKGROUND

### A.  Factual Background

A federal grand jury issued an indictment charging fourteen individuals, including McKnight, with various offenses

related to the importation of an illicit substance commonly known as Ecstasy from France into the United States. Shortly after the indictment, McKnight agreed to cooperate with the U.S. Attorney in exchange for "direct use immunity" against use of any statements he made in a prosecution against him by the U.S. Attorney.

Prior to McKnight's proffer session, he and the U.S. Attorney executed a written agreement in which he agreed to answer questions "truthfully and completely" in exchange for the government's promise "not to offer in evidence in its case-in-chief or for the purpose of any sentencing hearing, any statements made by [McKnight] at the meeting" in either "the above-captioned case [or] in any other prosecution that may be brought against [McKnight] by this Office." McKnight made incriminating statements during the proffer session regarding his recruitment of young American women to import Ecstasy into the United States.

The government made no use of McKnight's proffer statements in his criminal trial, which resulted in a hung jury. The grand jury subsequently issued a superseding indictment, pursuant to which McKnight pled guilty to seven counts and was sentenced to 100 months in prison.

Around the same time, the Tribunal de Grande Instance de Paris issued a judgment following trial *in abstentia*, convicting and sentencing McKnight of various crimes related to his Ecstasy trafficking. Among the evidence used in the French prosecution was an "investigation report concerning the deposition" of McKnight by United States authorities. The "deposition" was, in fact, McKnight's proffer statement to the U.S. Attorney. On the same day he was sentenced in the United States court, McKnight was taken into custody pursuant to a provisional extradition arrest warrant, issued at the request of the French government under the Extradition Treaty.

## B. Procedural Background

The United States government thereafter filed an extradition complaint on behalf of France. McKnight responded to the complaint, arguing, among other things, that the government had breached its immunity agreement by sharing his incriminating admissions with the French government. The magistrate judge rejected the argument, concluding that the language of the immunity agreement was not ambiguous— "[i]t means exactly what it says"—and by its "express terms" immunized "McKnight's statements only from being offered in evidence in the government's case-in-chief or for sentencing purposes." Because the French prosecution "was not brought by the [U.S. Attorney]," and was instead "brought by the Republic of France in its capacity as sovereign," the immunity agreement had not been violated. Rejecting McKnight's remaining arguments, the extradition magistrate judge found McKnight extraditable to France and certified the matter to the U.S. Secretary of State.

McKnight filed this § 2241 habeas petition challenging the extradition order, arguing (1) the government breached its immunity agreement with McKnight by sharing his incriminating statements with France, (2) his extradition was precluded by the Extradition Treaty because he was already convicted in the United States, and (3) France lacked probable cause to support extradition.

The district court denied the petition. The court reasoned that "the immunity agreement unambiguously applies exclusively to criminal cases brought by the [U.S. Attorney] against petitioner in its role as prosecutor for the United States." Because the language was not ambiguous, the district court concluded, the plain terms of the agreement govern, and the agreement was not breached. McKnight timely appealed, challenging only the district court's decision with respect to the government's alleged breach of the immunity agreement.

## II.  STANDARD OF REVIEW

We review de novo whether the district court erred in deny-ing a habeas corpus petition challenging certification of an extradition order; we review factual questions, as determined by the extradition magistrate judge, for clear error. *Man-Seok Choe v. Torres*, 525 F.3d 733, 741 (9th Cir. 2008); *Quinn v. Robinson*, 783 F.2d 776, 791-92 (9th Cir. 1986).

Here, "[b]ecause this is a claimed immunity agreement, ordinary contract principles apply." *United States v. Wilson*, 392 F.3d 1055, 1059 (9th Cir. 2004) (citing *United States v. Plummer*, 941 F.2d 799, 802-03 (9th Cir. 1991)). "Whether the facts establish a violation of the contract is a question of law reviewed de novo." *Id.* (citing *L.K. Comstock & Co.*, 880 F.2d at 221).

## III.  DISCUSSION

**[1]** We agree that the words of McKnight's immunity agreement were clear, explicit, and unambiguous. McKnight concedes as much. He acknowledges that "the [U.S. Attor-ney's] dissemination of the proffer was not expressly prohib-ited by the agreement," and that, at the time he signed the agreement, he recognized he "had to take the risk that his [statement might become] known and available to some other jurisdiction [that] could then use his statements to incriminate, and convict, him." He further admits that the U.S. Attorney's agreement not to use his statements "was limited to the pend-ing prosecution and any other prosecution [the U.S. Attorney] might bring against [him]," and that it did not reflect any promise by the government either to disclose or not to dis-close his statements "to other jurisdictions."

**[2]** The unambiguous words of the agreement are the end of the story. " 'As a rule, the language of an instrument must govern its interpretation if the language is clear and explic-it.' " *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667,

1670-71 (Cal. Ct. App. 1996) (quoting *Ticor Title Ins. Co. v. Rancho Santa Fe Assn.*, 177 Cal. App. 3d. 726, 730 (Cal. Ct. App. 1986)); *see also Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835-36 (9th Cir. 1996) ("[W]hen a contract has been reduced to writing, a court must ascertain the parties' intent from the writing alone."). Because the agreement here was clear, we must determine its meaning by reference to the parties' " 'objective intent, as evidenced by the words of the contract.' " *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 980 (Cal. Ct. App. 2006) (quoting *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (Cal. Ct. App. 2003)). Accordingly, the parties' "uncommunicated subjective intent is irrelevant." *Reigelsperger v. Siller*, 40 Cal. 4th 574, 579 (2007). Here, McKnight's unambiguous agreement with the government does not contain any limitation on the government's freedom to share his admissions with France. The U.S. Attorney's disclosure therefore did not violate the agreement.[1]

McKnight nevertheless argues that the implied duty of good faith and fair dealing "supplement[s]" the immunity agreement, incorporating his "reasonabl[e] expect[ation] that the [U.S. Attorney] would . . . not facilitate his proffer being used by another jurisdiction." In his view, the government's disclosure "frustrated" the "promise" of "protection" made to him by the U.S. Attorney. This argument fails because it presumes away the dispute—i.e., that the "protection" offered by the U.S. Attorney included protection from prosecution abroad. This broad construction of the "protection" offered simply is not reflected in the clear language of the agreement.

Assuming arguendo that the implied duty of good faith and fair dealing applies here, it " 'is limited to assuring compli-

---

[1]McKnight never argued, either before the district court or on appeal, that the U.S. Attorney's extradition proceedings on behalf of France constituted a violation of the direct use immunity agreement, so we do not decide whether it did.

ance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.' " *Spinks v. Equity Residential Briarwood Apartments*, 90 Cal. Rptr. 3d 453, 476 (Cal. Ct. App. 2009) (quoting *Pasadena Live v. City of Pasadena*, 114 Cal. App.4th 1089, 1094 (Cal. Ct. App. 2004)). The condition operates only to prevent a party from taking an action that " 'will injure the right of the other to receive the benefits of the agreement.' " *Major v. W. Home Ins. Co.*, 169 Cal. App. 4th 1197, 1209 (Cal. Ct. App. 2009) (quoting *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573 (1973)). It neither "alter[s] specific obligations set forth in the contract" nor "add[s] duties independent of the contractual relationship." *Shawmut Bank, N.A. v. Kress Assocs.*, 33 F.3d 1477, 1503 (9th Cir. 1994) (applying California law).

**[3]** In this case, while McKnight may have hoped the U.S. Attorney would not disclose his statements to the French authorities, there is nothing in the plain words of the agreement that provided that protection, and the implied covenant of good faith simply cannot be employed to read it into the agreement.

## IV.   CONCLUSION

**[4]** Future government witnesses are on notice that, if they wish to prevent federal prosecutors from sharing incriminating statements with other sovereigns (including, for example, the State governments), they must reduce that expectation to writing. Conversely, prosecutors should not be surprised when such protection is sought by cooperating witnesses, or when, if such protection is refused, witnesses decline the agreement. Because there was no written agreement preventing disclosure of the statements here, however, the government did not breach the agreement. *See United States v. Chiu*, 109 F.3d 624, 626 (9th Cir. 1997).

**AFFIRMED.**