Filed 9/30/21  Muniz v. CTC Investors CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ALBERTO MUNIZ et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CTC INVESTORS, LLC,<br><br>Defendant and Respondent. | F079107 & F082080<br><br>(Super. Ct. No. 16CV-01443)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Brian L. McCabe, Judge.

Law Offices of Michael E. Adams and Michael E. Adams for Plaintiffs and Appellants.

Law Offices of Margot L. Roen and Margot L. Roen for Defendant and Respondent.

-ooOoo-

Plaintiffs[1] claim to have sustained damages as a result of their reliance on false representations made by an on-site manager at their mobilehome park to the effect that no governmental approvals would be needed to make improvements. Plaintiffs insist their claim not only sounds in fraud, but also fits within the rubric of a breach of contract cause of action—specifically, a breach of the implied covenant of good faith and fair dealing. It is no abstract point, as plaintiffs' appeal stands or falls on this precise issue. The mobilehome park in question, known as Casa Mobile Home Park (the Park) in Los Banos, California, was owned and operated by defendant CTC Investors, LLC, who also employed the on-site manager.[2] Plaintiffs each asserted a similar pattern of events led to their respective damages: Each entered into a written lease for the use of an individual space at the Park, and each *also* purchased from defendant the existing mobilehome that was situated on the particular space being leased. Contemporaneous with these transactions, plaintiffs approached the on-site manager about their intentions to make improvements or renovations to the existing mobilehomes. The on-site manager allegedly represented to plaintiffs that any improvements they wished to make to their mobilehomes would only need to be approved by her, and no other approval or permission would be needed, since the Park was on private property. In reliance upon said representation(s), plaintiffs made substantial and costly improvements to their respective mobilehomes. Subsequently, state government inspectors from the California Department of Housing and Community Development (the HCD) inspected the

---

[1]     When we use the term plaintiffs in this opinion, we refer to those who were plaintiffs in the trial court *and* are appellants herein: namely, Alberto Muniz and Sofia Perez Hernandez, husband and wife; Arturo Mendez and Yolanda Fernandez, husband and wife; and Enrique Gonzalez and Azucena Ortiz, husband and wife. Although two additional individuals were originally named as plaintiffs in the pleadings, they were dismissed and are not part of this appeal.

[2]     CTC Investors, LLC, as the party that owned and operated the subject mobilehome park doing business as Casa Mobile Home Park, is referred to herein as defendant; whereas, the site or location of the mobilehome park is referred to herein as the Park.

mobilehomes and informed plaintiffs that their improvements were carried out without proper permits and were not in compliance with California standards. At that point, plaintiffs could not afford to make the required changes or modifications to bring their units into compliance with California law and they ultimately had to relinquish their mobilehomes.

Based on these events, plaintiffs filed their complaint against defendant for both fraud and breach of written contract. However, the trial court determined the fraud claims were barred by the three-year statute of limitations, and that ruling has not been challenged by plaintiffs. Plaintiffs' sole remaining cause of action was for breach of contract; more precisely, for breach of the implied covenant of good faith and fair dealing allegedly arising under the written lease agreements. This contractual cause of action was challenged by defendant via a motion for summary judgment. The trial court granted the motion, concluding under the undisputed facts that plaintiffs could not state a cause of action for breach of the implied covenant of good faith and fair dealing in this case. Plaintiffs now appeal from the resulting final judgment.

As more fully explained in this opinion, we agree with the trial court's conclusion that no cause of action existed in this case under the implied covenant of good faith and fair dealing. Although the allegations of false representations and detrimental reliance potentially indicated fraud, they cannot reasonably be stretched into a viable claim for breach of the lease agreements under the guise of the implied covenant of good faith and fair dealing. As the trial court correctly pointed out, the implied covenant is only recognized to protect the parties' rights or benefits embodied in their express contract. Here, there was no adequate connection between the rights or benefits provided in the lease agreements and the subject matter of the alleged false representations, and thus no cause of action for breach of the implied covenant was available. Accordingly, the judgment of the trial court is affirmed.

3.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs' First Amended Complaint

On May 18, 2016, plaintiffs commenced the present action by filing their original complaint in the Merced County Superior Court. A first amended complaint was filed on August 25, 2016, which was the operative pleading in the proceedings before the trial court. According to the first amended complaint, from approximately 2009 to 2011, defendant's on-site manager at the Park, M. Martinez,[3] in response to plaintiffs' several inquiries about making modifications or improvements to the mobilehomes, informed them that only her approval was necessary for any modifications or improvements.

We briefly highlight the specific allegations as to the individual plaintiffs, consisting of three married couples, under the first amended complaint. On January 26, 2010, plaintiffs Muniz and Hernandez went to the leasing office at the Park, where they met with the on-site manager, Martinez, to arrange to purchase from defendant a used single-wide mobilehome located in space No. 114 at the Park. Allegedly, "Muniz and Hernandez told Martinez that they would want to remodel the mobile home. Martinez replied that if they purchased the mobile home, they would have [defendant's] permission to remodel it as they wished, and that no other permission or approval was necessary for the remodeling because [the Park] was private property. Martinez stated that the purchase price would be $250.00 if they remodeled the mobile home as a single-wide, or $450.00 if they remodeled it into a double-wide. Muniz and Hernandez took the latter option, and accordingly paid $450.00 to Martinez for said purchase. Muniz and

---

[3] The pleadings and briefing sometimes identify defendant's representations by reference to Martinez's name; i.e., as the statements made by Martinez. Although initially named as a defendant, we note that Martinez is not referred to as a defendant or moving party in the trial court's order granting summary judgment nor in the final judgment, and it does not appear that she is a party to this appeal. Because it is unclear whether she continues to be considered individually a party defendant, we refer to her by name or job description, not as a defendant.

Hernandez thereupon moved into the mobile home and proceeded to make said improvements, expending in the vicinity of $60,000.00 to do so."

On November 12, 2009, plaintiffs Mendez and Fernandez went to the leasing office at the Park, where they met with on-site manager, Martinez to arrange to purchase from defendant a used single-wide mobilehome located in space No. 149. Allegedly, "Mendez and Fernandez told Martinez that they would want to remodel the mobile home, which was not then inhabitable, from a single-wide to a double-wide. Martinez replied that if they purchased the mobile home, they would have [defendant's] permission to remodel it, so long as they first provide Martinez with a sketch of the proposed improvements for her approval, and that no other permission or approval was necessary for the remodeling because [the Park] was private property. Martinez stated that the purchase price for the mobile home would be $250.00. Mendez and Fernandez agreed to the foregoing terms, and paid the $250.00 to Martinez. They then provided Martinez with a sketch of their proposed remodeling improvements, which included expanding the mobile home from single-wide to double-wide, and adding an exterior deck and a new roof, and Martinez approved the sketch. Mendez and Fernandez then built the improvements, expending approximately $20,000.00 for materials, together with their own labor reasonably valued at $22,000.00."

On November 13, 2009, plaintiffs Gonzalez and Ortiz went to the leasing office at the Park, where they met with Martinez to arrange to purchase from defendant a used single-wide mobilehome located in space No. 156. Allegedly, "Gonzalez and Ortiz told Martinez that they would want to remodel the mobile home. Martinez replied that if they purchased the mobile home, they would have [defendant's] permission to remodel it, so long as they first provide Martinez with a sketch of the proposed improvements for her approval, and that no other permission or approval was necessary for the remodeling because [the Park] was private property. Martinez stated that the purchase price for the mobile home would be $250.00. [Gonzalez and Ortiz] agreed to the foregoing terms, and

paid the $250.00 to Martinez.  Shortly thereafter, they provided Martinez with a sketch of their proposed remodeling improvements, which included rebuilding the existing two bedrooms, expanding a storage room to be a third bedroom, replacing windows, and adding [a] covered exterior deck.  Martinez approved the sketch ….”  After a further issue of whether an additional fee should be paid was resolved, Gonzalez and Ortiz proceeded with the improvements, “expending approximately $14,000.00 for materials, together with their own labor reasonably valued at approximately $12,000.00.”

According to the first amended complaint, plaintiffs each justifiably relied on the above representations because plaintiffs were not aware of the requirements under California’s mobilehome law and they reasonably believed that defendant, given its ownership and authority over the Park, was knowledgeable concerning the proper process for making improvements to the mobilehomes there.

Concurrently with the above purchase transactions, plaintiffs also entered into lease agreements to rent spaces in the Park from defendant—the same spaces on which the mobilehomes they purchased were situated.  Although not attached to the first amended complaint, it is apparent from copies of the lease agreements contained elsewhere in the record that said lease agreements were entered into by plaintiffs on the same date (and presumably on the same occasion) that the above described purchases were made.  The monthly rental for each of the spaces was $425 per month.

In August and September 2012, inspectors from the HCD allegedly visited the Park and inspected various mobilehomes there, including plaintiffs’, and then informed plaintiffs that the improvements to their mobilehomes were not in compliance with the building standards for mobilehomes in California, and that their mobilehomes must forthwith be brought into compliance therewith.  It was allegedly not feasible for plaintiffs to bring their mobilehomes into compliance with California law, as it would have been prohibitively expensive and beyond their financial means.  Attempts were made to reach a settlement with defendant.  A partial settlement was reached as to

6.

unlawful detainer matters only, and Plaintiffs ultimately relinquished title and ownership to their mobilehomes to defendant, but plaintiffs retained the right to bring the present lawsuit for damages.

Based on the above allegations, the first amended complaint set forth the following three causes of action: (1) fraudulent misrepresentation, (2) fraudulent concealment, and (3) breach of contract. The breach of contract cause of action was premised on the written lease agreements, referred to in that pleading as "rental agreements." It was alleged the breach of contract was, specifically, a breach of the implied covenant of good faith and fair dealing. As alleged in the first amended complaint: "By approving the improvements made by [p]laintiffs to their respective mobile homes notwithstanding that the improvements were illegal because the improvements were not in compliance with specifications of [California mobilehome law] and had not been approved by the HCD Department, [defendant] breached the condition of good faith and cooperation implied by law into said rental agreements."

The Demurrer Ruling

In its demurrer order filed on October 31, 2016, the trial court sustained defendant's general demurrer to the first and second causes of action for fraudulent misrepresentation and fraudulent concealment, on the ground such causes of action were time-barred under the three-year statute of limitations applicable to fraud claims. The demurrer was sustained to those causes of action with leave to amend. However, plaintiffs did not further amend their pleading, nor have they challenged in this appeal the trial court's order sustaining demurrer to the fraud causes of action based on the statute of limitations. It is undisputed that plaintiffs' fraud causes of action are eliminated from the case.

Defendant's Summary Judgment Motion

Following the demurrer ruling, plaintiffs' sole remaining cause of action was for breach of the lease agreements premised on allegations that defendant's conduct (i.e., the

7.

false representations regarding improvements) breached the covenant of good faith and fair dealing implied in those agreements. Defendant attacked the validity of that cause of action by filing a motion for summary judgment. Defendant argued in support of its motion for summary judgment that, even though the fraud causes of action were dismissed as untimely, plaintiffs were improperly attempting to frame the same allegations as a breach of contract "in order to avail themselves of the four-year limitations period contained in Code of Civil Procedure [section] 337." According to defendant, the allegations of false representations sound in fraud, not breach of contract, and therefore are time-barred even though labeled as breach of contract. Moreover, defendant argued the implied covenant of good faith and fair dealing cannot be used to create new terms or substantive duties that are not reflected in the provisions of their express agreement. On this latter point, defendant's motion pointed out that plaintiffs have acknowledged, in verified responses to discovery, that there is no contractual provision in the lease agreements dealing with the process of permitting improvements.

In their opposition to the summary judgment motion, plaintiffs argued they possess a viable cause of action for breach of the implied covenant of good faith and fair dealing, which they argued was distinct, factually and legally, from the previously alleged fraud claims. Plaintiffs further contended the implied covenant has a broader scope than was indicated by defendant's motion, and is available to prevent a contracting party from engaging in conduct which—while not technically transgressing the express covenants—frustrates the other party's rights to the benefits of the contract. According to plaintiffs: "[T]he central benefit to [p]laintiffs of their involved leases of spaces in [the Park] was to be able to reside in their mobilehomes located in those spaces. For each [p]laintiff, that benefit was frustrated by [defendant's] unreasonable assurance that only [defendant's] approval was necessary for the proposed mobile home improvements into which [each plaintiff] then carried out through investment of considerable time and

money." Plaintiffs' opposition included copies of the relevant written lease agreements and other related tenant/landlord documents.

Defendant's reply papers, in further support of its summary judgment motion, responded that the lease agreements only concerned the rental of spaces in the Park, and had nothing to do with the requirements for government approval and/or the permitting process for improvements to plaintiffs' mobilehomes. That is, "[t]he central benefit of the lease agreement[s] is the lot space, not the … actual mobilehome." From this premise, defendant's reply argued: "To find that the lease for a lot space in the mobilehome park somehow also implies a right to a mobilehome in which they can reside, as [p]laintiffs claim, would be contrary to the well-established law of the California Supreme Court, which is very clear that the implied covenant cannot impose substantive terms and conditions beyond those to which the parties *actually agreed* …."

The hearing on the motion was held on January 29, 2019. On January 31, 2019, the trial court issued its order granting defendant's motion for summary judgment. In that order, the trial court explained its ruling as follows:

> "1.    Plaintiffs' third cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing is without merit. It is undisputed that [p]laintiffs do not assert that [d]efendant breached an express term of the lease agreement with [p]laintiffs. Instead, [p]laintiffs allege that [d]efendant breached the implied covenant of good faith and fair dealing in connection with the lease agreements when property manager [M.] Martinez falsely asserted to [p]laintiffs that only her permission was required for remodeling their mobile homes. The Court concludes as a matter of law that the alleged 'breach' by [d]efendant's employee, while potentially supporting claims sounding in fraud which the Court has previously ruled are time-barred, does not support a contractual claim for breach of the implied covenant of good faith and fair dealing.
>
> "2.    Citing *Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 349–350, in which the Supreme Court held that the implied covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement,' the Court in this case finds that, as applied here, the Court is not persuaded that the covenant of

9.

good faith and fair dealing implied in the lease agreements with [p]laintiffs imposes substantive duties on [d]efendant and its employees to correctly advise [p]laintiffs on the need to obtain governmental approval for any remodeling plans for the mobile homes owned and occupied by [p]laintiffs.

"3.     The Court further finds that, in light of its ruling, it is unnecessary for the Court to decide whether plaintiffs' breach of contract claims are also time-barred as a matter of law."

Based on its order granting summary judgment, and in the same order, the trial court also ordered that judgment shall be entered in favor of defendant and against plaintiffs.

After the above summary judgment order was filed, plaintiffs made ex parte requests and/or motions to amend the complaint in order to, among other things, remove the two fraud causes of action. From the bench, the trial court explained at one of the hearings why it would not grant the proposed amendment: "The Court notes that the real focus here … is the conduct of the manager, specifically an oral statement to parties, plaintiffs, regarding whether or not their remodel would comport with state regulations. And because of that, it appears to the Court that the action doesn't relate to the terms and conditions of the contract. It's something different. It's something beyond which the Court believes sounds in fraud." In a subsequent written order denying amendment, the trial court stated as follows: "[E]ven stripped of all references to the fraudulent nature of the alleged misrepresentations made by Ms. Martinez, [p]laintiffs' cause of action for breach of the implied covenant of good faith and fair dealing would still fail. The Court notes, again, that 'as applied here, the covenant of good faith and fair dealing implied in the lease agreements does not impose substantive duties on defendant and its employees to advise [p]laintiffs' either correctly or at all on the process for obtaining approval from the appropriate authorities for any remodeling and/or additions to the mobile homes they occupied in [d]efendant CTC Investors, LLC's Casa Mobile Home Park."

10.

<u>Plaintiffs' Notice of Appeal</u>

Plaintiffs filed a notice of appeal in case No. F079107 from the order granting summary judgment. Because the trial court had not yet entered a final judgment, the appeal was objected to by defendant as premature. To cure the apparent prematurity, once the trial court formally entered a final judgment based on its prior order granting summary judgment, plaintiffs filed a new appeal in case No. F082080 from said final judgment and asked that we consolidate the two appeals. By our order of June 14, 2021, we granted plaintiffs' motion to consolidate. We ordered that the consolidation is "under case No. F079107," and that "[n]o further briefing is necessary, as the matter is fully briefed based on the briefing previously filed in case No. F079107." In light of said consolidation, we conclude there is no issue of prematurity and the appeal is properly from the final judgment.

## DISCUSSION

### I. Standard of Review

A party may move for summary judgment on the ground the action has no merit. (Code Civ. Proc., § 437c, subd. (a).) Summary judgment is appropriate if the papers submitted show there is no triable issue of material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) On appeal, we review the trial court's decision granting a motion for summary judgment de novo. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.) Our task is to independently determine whether an issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1206; *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601; see

11.

*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 [on review of summary judgment order, "we examine the facts presented in the trial court and determine their effect as a matter of law"].)

To the extent the terms or interpretation of the lease agreements are relevant to our review of the motion for summary judgment, we apply the rule that where the language of a written agreement is unambiguous and no disputed extrinsic evidence bears upon its meaning, interpretation of the document is a legal issue for the court. (*Chacon v. Union Pacific Railroad* (2020) 56 Cal.App.5th 565, 573; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.) Since that is the case here, we apply de novo review to the interpretation of the lease agreements. (*Western Heritage Ins. Co. v. Frances Todd, Inc.* (2019) 33 Cal.App.5th 976, 983.)

## II. Overview of the Implied Covenant of Good Faith and Fair Dealing

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658.) The precise nature of the implied covenant will depend on the contractual purposes. (*The McCaffrey Group, Inc. v. Superior Court* (2014) 224 Cal.App.4th 1330, 1352.) The implied covenant has been recognized to be particularly applicable in situations where one party is invested with a discretionary power affecting the rights of another; "[s]uch power must be exercised in good faith." (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 372 (*Carma*).) Courts have also held that the implied covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose. (*Pasadena Live v. City of Pasadena* (2004) 114 Cal.App.4th 1089, 1093; *Harm v. Frasher* (1960) 181 Cal.App.2d 405, 417.)

12.

In *Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th 317 (*Guz*), the Supreme Court explained the foundational rule that the scope of the implied covenant depends upon and is limited by the terms of the underlying contract. (*Id*. at pp. 349–351.) Concerning that basic rule or principle, the court stated as follows: "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation.] The covenant thus cannot ' "be endowed with an existence independent of its contractual underpinnings." ' [Citation.] It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz, supra*, at pp. 349–350.)[4]

Other cases reflect the same essential analysis. For example, in *Carma*, *supra*, 2 Cal.4th 342, the Supreme Court stated: "It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract. [Citations.] As explained in *Foley* [*v. Interactive Data Corp.* (1988) 47 Cal.3d 654], under traditional contract principles, the implied covenant of good faith is read into contracts 'in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.' [Citation.]" (*Carma, supra*, at p. 373; see *21st Century Ins. Co. v. Superior Court* (2009) 47 Cal.4th 511, 526–527 [the implied covenant also cannot be invoked to vary express terms or to prohibit conduct the contract expressly allows].)

As aptly summarized in *Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026 (*Racine*): "The implied covenant of good faith

---

[4]     Applying the above principles to the employment context before it, *Guz* held that where an employee's contract for employment was *at will*, the fact that the employer may have failed to follow an established personnel policy (i.e., to provide an opportunity for improvement) prior to the employee's termination did not give rise to a breach of the implied covenant. (*Guz, supra*, 24 Cal.4th at p. 350.)

13.

and fair dealing rests upon the existence of some specific contractual obligation. [Citation.]  'The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.'  [Citation.]  As we stated in *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136 at page 1153:  'In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.' "  (*Racine*, *supra*, 11 Cal.App.4th at pp. 1031–1032; accord, *Cobb v. Ironwood Country Club* (2015) 233 Cal.App.4th 960, 966; *Avidity Partners, LLC v. State of California* (2013) 221 Cal.App.4th 1180, 1204.)  In *Waller v. Truck Ins. Exchange, Inc*. (1995) 11 Cal.4th 1 (*Waller*), the Supreme Court used substantially the same language to describe the implied covenant, stating in similar fashion that "the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.…  Absent that [underlying] contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'  [Citation.]"  (*Waller*, *supra*, 11 Cal.4th at p. 36, citing *Love v. Fire Ins*. *Exchange*, *supra*, 221 Cal.App.3d at p. 1153.)

In sum, "the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." (*Racine*, *supra*, 11 Cal.App.4th at p. 1032.)  As noted herein, this same core rule has been subsequently articulated by the Supreme Court in *Guz*, as follows: "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*.  [Citation.]  The covenant thus

14.

cannot ' "be endowed with an existence independent of its contractual underpinnings." ' [Citation.]" (*Guz*, *supra*, 24 Cal.4th at p. 349.)

While the scope of conduct prohibited by the implied covenant of good faith and fair dealing is circumscribed by the purposes and express terms of the contract, it is not required that there be a breach of a specific provision of the parties' express contract. (*Carma*, *supra*, 2 Cal.4th at p. 373.) "Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract." (*Ibid*., fn. omitted.) However, as noted further by the Supreme Court in *Carma*, discerning whether the implied covenant is implicated or has been violated in a particular case can be difficult: "It is of course a simple matter to determine whether given conduct is within the bounds of a contract's express terms.… Difficulty arises in deciding whether such conduct, though not prohibited, is nevertheless contrary to the contract's purposes and the parties' legitimate expectations." (*Ibid*.)

### III. Plaintiffs Did Not Possess a Viable Claim for Breach the Implied Covenant

We begin our analysis of this issue by reviewing the express terms of the written lease agreements in light of the nature of the on-site manager's alleged false representations. The lease agreements plainly involve or relate to the leasing or rental of particular spaces or sites within the Park. Each lease agreement included the provision of a monthly rental amount for use of the particular space or site, and also noted that certain amenities would be provided by the Park. The lease agreements also incorporated by reference the terms of California's "Mobilehome Residency Law," and renters were to acknowledge the receipt of a copy of such law. Paragraph 23 of the lease agreements is entitled "Improvements," but merely concerns additions like fences, driveways, and the planting of trees and shrubs. Nothing in the lease agreements explicitly addresses the subject of substantial improvements or renovations being made by mobilehome owners to their mobilehomes or the approval or permit process involved for making such improvements or renovations. Indeed, in opposition to defendant's summary judgment

motion, plaintiffs admitted in their separate statement that no provision in the written leases reflected that government approvals would not be required.

Based on the above, the trial court concluded there was no factual basis for finding an implied covenant existed regarding what approvals would be needed to make improvements to plaintiffs' mobilehomes. The trial court held it was "not persuaded that the covenant of good faith and fair dealing implied in the lease agreements with [p]laintiffs imposes substantive duties on [d]efendant and its employees to correctly advise [p]laintiffs on the need to obtain governmental approval for any remodeling plans for the mobile homes owned and occupied by [p]laintiffs."

We agree with the trial court's conclusion. The manifest purpose of the written lease agreements was the rental of *spaces* in the Park, not the purchase or improvement of any person's mobilehome. The necessity of obtaining government approvals or permits before making substantial improvements to one's own mobilehome, situated on a rented space at the Park, was not within the scope of the express provisions of said lease agreements. In other words, no express covenant or benefit provided under the lease agreements related to that specific subject matter. Consequently, inasmuch as there was no express contractual right or benefit concerning which an implied covenant would be needed to afford protection from the conduct of the other party, the implied covenant does not apply to the circumstances of this case. (*Guz*, *supra*, 24 Cal.4th at pp. 349–350; *Waller*, *supra*, 11 Cal.4th at p. 36; *Racine*, *supra*, 11 Cal.App.4th at pp. 1031–1032.) Rather, as the trial court properly concluded in granting summary judgment, the essence and "real focus" of plaintiffs' claim here was their detrimental reliance on the alleged false representations made by the on-site manager, which concerned an issue that was apart from and beyond the rights provided to plaintiffs under the lease agreements. Therefore, plaintiffs' claim did not constitute a breach of said lease agreements; and if any claim may have existed, it sounded in fraud, which was previously found to be time-barred.

16.

For all of the foregoing reasons, it is clear the trial court properly granted summary judgment in favor of defendant.

## DISPOSITION

The judgment of the trial court is affirmed. Costs on appeal are awarded to defendant.

LEVY, Acting P.J.

WE CONCUR:


POOCHIGIAN, J.


DE SANTOS, J.

17.